IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULI WINTJEN,                                      )
                                                   )
                                                   )          2:19-CV-00069-CCW
                   Plaintiff,                       )
                                                   )
          v.                                        )
                                                   )
DENNY'S, INC., DOE DEFENDANTS 1-                    )
10,                                                 )
                                                   )
                   Defendants.                      )

## OPINION

Before the Court are Plaintiff Juli Wintjen's ("Plaintiff") Motion for Partial Summary Judgment, ECF No. 54, and Defendant Denny's, Inc.'s ("Defendant") Motion for Partial Summary Judgment and Motion to Dismiss.  ECF No. 57.

In this hybrid class/collective action, Plaintiff claims on behalf of herself and other individuals employed by Defendant in a tipped capacity that Defendant violated its minimum wage obligations.  In Count I, Plaintiff alleges that Defendant's policies and practices violated the Fair Labor Standards Act ("FLSA") in two ways:  (1) Defendant failed to properly notify its tipped employees that it would claim a tip credit and pay them sub-minimum wage;  and (2) Defendant paid its tipped employees sub-minimum wage while requiring them to perform significant amounts of non-tip-generating "side-work."   In Count II, Plaintiff asserts that those same policies and practices violated similar provisions of the Pennsylvania Minimum Wage Act ("PMWA").

In her Motion, Plaintiff seeks summary judgment on both Count I and Count II as to whether Defendant "(i) complied with the 'tip credit' exception" to the FLSA and PMWA, and whether Defendant "(ii) kept proper records of the time worked by its servers as required by the FLSA and PMWA."  ECF No. 54.  Defendant seeks summary judgment in its favor on Plaintiff's

FLSA claims (Count I) and dismissal, without prejudice, of Plaintiff's PMWA claims (Count II) pursuant to 28 U.S.C. § 1367.  ECF No. 57.

## I.     Undisputed Material Facts

Plaintiff was employed as a "server" at Defendant's Cranberry Township restaurant from mid-September through the end of November 2017, for a total of nine weeks.  *See* ECF No. 58 at 4, ¶ 10;  7, ¶ 25; and 7, ¶ 26;  ECF No. 62 at 3, ¶ 2.  To record her time, Defendant assigned Plaintiff three job codes: "Training," "Meeting" and "Server."  *See* ECF No. 58 at 4, ¶ 11.  Under the "Training" and "Meeting" job codes, Defendant paid Plaintiff the federal minimum wage of $7.25 per hour.  *Id.*  Under the "Server" job code, Defendant paid Plaintiff the Pennsylvania tipped minimum wage of $2.83 per hour.[1]  *Id.*

In addition to taking orders and serving customers, a server's duties included completing certain "side-work" for each shift worked.  ECF No. 56-3 at 127:20–23.  Although the side-work could vary in both content and duration from shift to shift, Plaintiff's side-work tasks included activities like rolling silverware, cleaning and stocking the restaurant, and, on at least two occasions, washing dishes.  *See* ECF No. 63-1 at 191:10–24.  Plaintiff testified that her side-work took anywhere from an hour to two hours or more to complete each shift.  ECF No. 63-1 at 171:10–21.  When a server was clocked in under the Server job code, Defendant did not record or otherwise track the time the server spent on side-work.  ECF No. 56-3 at 130:22–131:2.

Plaintiff testified that, during her onboarding, she was provided with various written materials, including an employee handbook.  ECF No. 58 at 4, ¶¶ 12–14.  Plaintiff acknowledged that she did not read these materials carefully and could not recall any information provided to her

---

[1] The federal minimum cash wage for tipped employees is $2.13 per hour.  *See* 29 C.F.R. § 531.50.  Many states, including Pennsylvania, set a higher minimum cash wage for tipped employees.  *See Minimum Wages for Tipped Employees,*
*U.S. Dep't of Labor Wage and Hour Div.* (Jan. 1, 2021), https://www.dol.gov/whd/state/tipped.htm.

verbally by the manager who conducted her onboarding. *Id.* at 4, ¶ 15 and 6, ¶ 22.  The manager, Madeleine Weinel ("Ms. Weinel"), provided a sworn declaration stating that in the course of Plaintiff's onboarding she followed a checklist approved by Defendant and informed Plaintiff (1) that Defendant "utilized a tip for food servers in Pennsylvania;"  (2) of the difference between the federal minimum wage and the Pennsylvania tip credit wage;  (3) that Defendant would make up the difference if Plaintiff did not receive enough in tips to meet the federal minimum wage;  and (4) that Defendant did not "participate in tip pooling arrangements" and that Plaintiff "should retain all tips received."  ECF No. 56-13 at ¶¶ 6–14.  Ms. Weinel's declaration also affirms that she showed Plaintiff "the federal and Pennsylvania labor law posters posted in the breakroom" and provided Plaintiff with written materials, including Defendant's "Employee Guidebook" and "Important Wage and Hour Summary and Acknowledgment Form."  *Id.*

During her nine weeks of employment with Defendant, Plaintiff logged in using the "Server" job code for every shift except six.  *See* ECF No. 59-2 at 9.  She logged in under the "Training Code" on five occasions and used the "Meeting" code once.  *See id.*   In addition to tracking the job code under which an employee was logged in and the hours worked, Defendant also maintained records reflecting the time Plaintiff clocked in and out for each shift, break time, the number of hours worked, the amount of tips reported, and the amount of Plaintiff's sales.  *See* ECF No. 60 at 17 (summarizing contents of ECF No. 59-2 at 9).  According to Defendant's corporate representative, servers were instructed to clock in under a minimum wage job code "[i]f they are not in a tipped role," as in situations when "the kitchen is not open" and there would not be "guests coming into the restaurant."  ECF No. 61-2 at 115:6–117:7.  Accordingly, if an employee was logged in under the "Server" job code, Defendant did not track the amount of time

the employee spent on work not directly related to generating tips.  *See* ECF No. 56-3 at 130:22–131:2.

## II.    Procedural History

Plaintiff filed her Complaint on January 22, 2019, alleging violations of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA") on behalf of herself and similarly situated current and former individuals employed by Defendant in Pennsylvania "in a tipped capacity, namely 'servers' ('waiters' and 'waitresses') (collectively 'Tipped Employees')."  ECF No. 1 at ¶¶ 1, 4, 10, and 12.  Pursuant to the operative Second Case Management Order issued by then-presiding Judge J. Nicholas Ranjan, the first phase of discovery closed on April 6, 2020, and the Court indicated that it would rule on motions for summary judgment before considering any motion for class certification or certification of an FLSA collective.  *See* ECF No. 49.  As such, no motion for certification of a class under Federal Rule of Civil Procedure 23 or for conditional certification of an FLSA collective has yet been filed.  On July 6, 2020, Plaintiff filed her Motion for Partial Summary Judgment and Defendant filed its Motion for Partial Summary Judgment and Motion to Dismiss.  ECF Nos. 54 and 57.  The case was transferred to the undersigned on October 23, 2020, ECF No. 67, and the parties' Motions are now fully briefed and ripe for resolution.

## III.   Discussion

### A.    The One-Way Intervention Rule Applies to the Extent Plaintiff Seeks Summary Judgment on Behalf of Members of the Putative PMWA Class (Count II).

The "one-way intervention rule" provides that, in a putative class action brought pursuant to Federal Rule of Civil Procedure 23, such as Plaintiff's PMWA claims in Count II of the Complaint, "it is 'unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.'"  *Higgins v. Bayada Home*

4

*Health Care, Inc.*, Civil No. 3:16-CV-02382, 2020 U.S. Dist. LEXIS 85678, at *6 (M.D. Pa. May 15, 2020) (quoting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 548 (1974)).  The rationale behind the rule is that "until a class is certified, absent members of the class are not bound by a ruling on the merits—whereas, by contrast, the party opposing the class (typically, the defendant) is bound from the outset."  *Koehler v. USAA Cas. Ins. Co*., Civil Action No. 19-715, 2019 U.S. Dist. LEXIS 158154, at *8 (E.D. Pa. Sept. 16, 2019) (citing *American Pipe*, 414 U.S. at 545-47). That said, "a defendant may waive this one-way intervention rule when the defendant agrees to a pre-class certification merits ruling."  *Higgins*, 2020 U.S. Dist. LEXIS 85678, at *7 (citing *Katz v. Carte Blanche Corp*., 496 F.2d 747, 762 (3d Cir. 1974));  *see also Reynolds v. Turning Point Holding C*o., Case No. 2:19-cv-01935-JDW, 2020 U.S. Dist. LEXIS 233883, at *10 (E.D. Pa. Dec. 14, 2020) (finding that when defendant "filed its summary judgment motion, it waived the protection of the one-way intervention doctrine for issues that it raised in its summary judgment motion.").

Thus, before turning to the merits of the parties' claims, the Court will first address Defendant's argument that, in light of the one-way intervention rule, the Court should defer ruling on Plaintiff's Motion to the extent she seeks summary judgment on behalf of the as-yet-uncertified PMWA class (Count II of the Complaint).  *See* ECF No. 60 at 4–6.  Plaintiff contends that by failing to object to the court's stated plan to rule on motions for summary judgment before entertaining any motions for class certification and by seeking summary judgment itself, Defendant has waived any protection afforded by the one-way intervention rule.  *See* ECF No. 66 at 9–10 (citing ECF No. 49) ("The Court will set a schedule for briefing on any motions for conditional certification/class certification and a schedule regarding Phase 2 discovery after its summary-judgment decision.").

With respect to the putative PMWA class, Plaintiff is seeking summary judgment "against Denny's for all servers up to the date Denny's is capable of proving a server received a copy of the January 2019 Tip Notification Form." ECF No. 55 at 12. As such, the one-way intervention rule is implicated: no class has been certified yet and a ruling on summary judgment in Plaintiff's favor would be binding on Defendant as to all absent class members, whereas a ruling in Defendant's favor would not bind the absent class members. And, although Plaintiff is correct that the Court made clear its intention to rule on summary judgment motions before ruling on class certification, *see* ECF No. 49, there is no indication that Defendant affirmatively waived the protection of the one-way intervention rule. Indeed, in both its own summary judgment motion and its opposition to Plaintiff's Motion, Defendant expressly invokes the protection of the one-way intervention rule. *See* ECF Nos. 58 at 1, n.1 and 60 at 4–6. In addition, while Defendant contends that if Plaintiff's FLSA claims fail her PMWA claims should be dismissed for lack of jurisdiction under 28 U.S.C. § 1367, Defendant is not seeking summary judgment in its favor on the merits of Plaintiff's PMWA claims. *See* ECF No. 57.

Therefore, in light of the one-way intervention rule, the Court will deny, without prejudice, Plaintiff's Motion for Partial Summary Judgment to the extent Plaintiff seeks summary judgment on the claims asserted on behalf of the putative PMWA class in Count II of the Complaint.

### B.    The Cross-Motions for Summary Judgment

#### 1.    Summary Judgment Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951

F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting Anderson, 477 U.S. at 248).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). That said, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e)…requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor…to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of

evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

Where, as here, "cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 U.S. Dist. LEXIS 83633, at *6 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

### 2.      Plaintiff's FLSA Tip Credit Notice Claim

"The FLSA was enacted for a 'broad remedial purpose,' with its 'central aim' being the 'achieve[ment] ... [of] certain minimum labor standards.'" *Rui Tong v. Henderson Kitchen, Inc.*, Civil Action No. 17-1073, 2018 U.S. Dist. LEXIS 176294, at *6 (E.D. Pa. Oct. 12, 2018) (quoting *Smiley v. E.I. Dupont De Nemours & Co*., 839 F.3d 325, 329 (3d Cir. 2016)).  To accomplish this, the FLSA "establishes federal minimum-wage, maximum hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1527 (2013).  As relevant here, "[t]he FLSA requires employers to pay employees a minimum hourly wage for hours worked in a workweek, currently $7.25 per hour, unless an exception applies." *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184-JRS, 2020 U.S. Dist. LEXIS 83633, at *7–*8 (E.D. Pa. May 12, 2020) (citing 29 U.S.C. § 206(a)(1)).

One such exception to the minimum wage requirement, the tip credit exception, permits employers to pay an employee "engaged in an occupation in which [she] customarily and regularly receives more than $30 a month in tips," 29 U.S.C. § 203(t), less than the federally mandated minimum wage "if the employees' wages and tips, added together, meet or exceed the required

minimum wage." *Casco v. Ponzios RD, Inc.*, Civil No. 16-2084 (RBK/JS), 2019 U.S. Dist. LEXIS 65320, at *10 (D. N.J. Apr. 17, 2019) (citing *Chen v. Century Buffet & Rest.*, Civil Action No. 09-1687 (SRC), 2012 U.S. Dist. LEXIS 4214, at *14 (D.N.J. Jan. 12, 2012)); *see also* 29 U.S.C. § 203(m). However, an employer may not avail itself of the tip credit exception unless it first provides notice as required by the statute. *See* 29 U.S.C. § 203(m) (tip credit exception does not apply unless the employee "has been informed by the employer of the provisions of this subsection").

This "notice requirement is a firm one." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994); *accord. Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977) ("What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a…credit from the receipt of tips toward your obligation to pay the minimum wage."). As such, "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." *Reich*, 28 F.3d at 403 (citing *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322-23 (1st Cir. 1992)); *see also*, *Casco*, 2019 U.S. Dist. LEXIS 65320, at *12 ("[T]he employer bears the burden of showing that it satisfied the notice requirement."). "If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Reich,* 28 F.3d at 404 (quoting *Martin*, 969 F.2d at 1323).

Here, the parties disagree about what information an employer must provide to comply with § 203(m)'s notice requirement. Plaintiff argues that the FLSA's implementing regulations, specifically 29 C.F.R. § 531.59(b), set forth "in plain English" what the statute requires. ECF No. 55 at 8. According to § 531.59(b), an employer seeking to take advantage of the tip credit must provide its tipped employees with the following five pieces of information:

> [1] The amount of the cash wage that is to be paid to the tipped employee by the employer;  [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, [3] which amount may not exceed the value of the tips actually received by the employee;  [4] that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips;  and [5] that the tip credit shall not apply to any employee who has not been informed of the requirements in this section.

29 C.F.R. § 531.59(b) (numbering added for clarity).  Defendant, relying on precedent from the United States Court of Appeals for the Seventh Circuit, maintains that "the statute itself requires an employer to provide three pieces of information."  ECF No. 60 at 8.  Under this rubric, an employer must inform a tipped employee:

> (a) in anticipation of tips the employer will pay less than the minimum wage;  (b) how much the cash wage will fall short of the current minimum wage;  and (c) if tips plus the cash wage do not at least match the current minimum wage, the employer must make up the difference.

*Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 556–57 (7th Cir. 2016).  While *Schaefer* involved alleged tip credit violations that occurred before the Department of Labor ("DOL") promulgated § 531.59(b) in 2011, Defendant notes that the court in *Schaefer* called into question whether items [4] and [5] from § 531.59(b) are actually required under the statute, ECF No. 60 at 8 (citing *Schaefer*, 829 F.3d at 556), and points out that Plaintiff "concedes" that "29 C.F.R. [§] 531.59 did not purport to change the notification requirements from what they were prior to 2011."  *Id.* at 9.  Indeed, Defendant suggests that, because "the provisions of § 203(m)…are unambiguous," to the extent § 531.59 did attempt to change the notice requirements, "it is not entitled to deference under *Chevron v. Natural Resources Defense Council,* 467 U.S. 837 (1984)."  *Id.*

Under the *Chevron* doctrine, whether to give deference to an agency's interpretation of a statute is governed by a two-step analysis.  First, the court must determine if the statute is ambiguous.  Where "Congress has directly and clearly spoken to the precise question at issue, our

. . . analysis is complete . . . and Congress's unambiguously expressed intent controls." *Helen Mining Co. v. Elliott*, 859 F.3d 226, 234 (3d Cir. 2017) (citing *Chevron* 467 U.S. at 842-43). Ambiguity in a statute exists if "Congress has not addressed 'the precise question at issue,' whether by being 'silent or ambiguous with respect to the specific issue' or by leaving 'a gap for the agency to fill.'" *Helen Mining Co.*, 859 F.3d at 234 (quoting *Chevron*, 467 U.S. at 843-44). Accordingly, under step two of the *Chevron* analysis, the court must determine whether "the agency's interpretation is based on a permissible interpretation of the ambiguous statutory language." *Belt v. P.F. Chang's Bistro, Inc.*, 401 F.Supp.3d 512, 526 (E.D. Pa. 2019) (citing *Chevron*, 467 U.S. at 843–844). If so, the court should defer to the agency's interpretation. *Id.*

While the Court is inclined to agree with Defendant that § 203(m) is unambiguous, the outcome is the same either way. The Court concurs with district courts that have compared § 531.59(b) with § 203(m) and have concluded that the regulation "does not require employers to do anything other than what they were already obligated to do under section 3(m), which is 'inform employees of the provisions of this subsection.'" *Nat'l Rest. Ass'n. v. Solis*, 870 F.Supp.2d 42, 56 (D. D.C. 2012) (quoting 29 U.S.C. § 203(m)). Indeed, § 203(m)'s plain language does not confine the notice requirement to any particular subset of the provisions of § 203(m), instead requiring the employer to inform employees "of the provisions of this subsection" *in toto*. Thus, even if the Court were to find ambiguity in § 203(m)—which, for example, the *Schaeffer* court suggested might be the case, *see* 829 F.3d at 556 (noting that "[t]he statute is hard to parse, even for someone with a legal education, given its opaque structure")—the *Solis* court's side-by-side analysis of § 203(m) and § 531.59(b) makes clear that the regulation is a "permissible interpretation of the ambiguous statutory language" for the simple reason that it restates, in plain English, no more and no less than what is contained in the statute. *Solis*, 870 F.Supp.2d at 55–56; *see also Howard v.*

*Second Chance Jai Alai LLC, Case No.:* 5:15-cv-200-Oc-PRL, 2016 U.S. Dist. LEXIS 78538, at *9–11 (M.D. Fla. June 16, 2016).  Accordingly, the Court will apply § 203(m)'s tip credit notice requirements, as articulated in § 531.59(b).

### a.    Defendant's Tip Credit Notice Was Incomplete

Considering the five required notice provisions in light of the record before it, the Court concludes that the tip credit notice Defendant provided to Plaintiff was incomplete.  While the parties disagree about the sufficiency of Defendant's notice with respect to items [1] through [4] of § 531.59(b), there is no real debate, and the record is clear, that Defendant did not inform its Pennsylvania servers, including Plaintiff, of item [5], i.e. that the tip credit would not apply to any employee who had not received notice until it issued its "Important Information for Tipped Employees" notice in January of 2019.  *See* ECF No. 56-6.

None of Defendant's written onboarding materials—e.g. the "Employee Handbook" and the "Important Wage and Hour Summary and Acknowledgement Form," ECF No. 56-13 at 16, 30—include notice item [5], nor does Ms. Weinel's declaration indicate that notice item [5] was provided to Plaintiff orally.  *See id.* at 1–2.  Indeed, although DOL's "Fact Sheet #15"—which sets out the five required notice provisions—was provided to Defendant's Pennsylvania managers "beginning in 2018," there is no evidence that all of the information in Fact Sheet #15, including item [5] from § 531.59(b), was ever provided to Plaintiff or any other server.  *See* ECF No. 56–2 at 21;  ECF No. 56–3 at 162:1–22;  ECF No. 56–8.  Defendant's sole argument that it provided item [5] is that because it arguably provided items [1] through [4], item [5] should not be required.  ECF No. 60 at 12–13.  Thus, because, as Defendant's corporate representative testified, Defendant provided the same information to all new servers at onboarding, ECF No. 56-3 at 64:6–19, even assuming all tipped employees received the same verbal notice that Plaintiff received from Ms.

Weinel, there is no evidence before the Court that tip credit notice item [5] would have been provided in writing or communicated verbally to any member of the putative FLSA collective.

Both parties here have moved for summary judgment on the sufficiency of Defendant's tip credit notice with respect to Count I of the Complaint. Defendant's Motion on this issue will be denied because Defendant has not carried its burden to show that there is no genuine issue of material fact such that it provided Plaintiff with a complete tip credit notice.[2] On the other hand, Plaintiff's Motion, to the extent she seeks judgment on her FLSA tip credit notice claim in Count I, will be granted because, viewing the facts in the light most favorable to Defendant, the non-movant, the Court finds that there is no genuine issue of material fact that Defendant failed to fully comply with the tip credit notice requirement and, thus, "no tip credit can be taken and [Defendant] is liable for the full minimum-wage." *Reich*, 28 F.3d at 403.

### b.   Plaintiff Has Article III Standing to Pursue Her Claim

In its Motion, Defendant argues that Plaintiff "lacks Article III standing to pursue her claim" that Defendant's "tip-credit notice was sufficient as she [has] not suffered any concrete injury fairly traceable to the alleged deficient notice." ECF No. 58 at 14–15. This is so, according to Defendant, because Plaintiff was aware that she "would be making less than minimum wage as a server, plus tips" and because, according to Defendant, "the harm that § 203(m) seeks to prevent is not an employee's 'receipt of a non-compliant disclosure,' but the harm that may result from any employee accepting a compensation arrangement" she otherwise would not. *Id.* at 15. Defendant further notes that Plaintiff never earned less than minimum wage during her

---

[2] In addition to the sufficiency of Defendant's tip credit notice, Plaintiff raises two other arguments in opposition to Defendant's Motion, specifically pointing to Plaintiff's testimony that Defendant's managers told Plaintiff she (1) "should" share tips with non-tipped workers like cooks and (2) should report 10% of her sales as tips rather than the amount of tips actually received, as creating issues of fact regarding whether Defendant could claim a tip credit, even if it provided compliant notice. *See* ECF No. 62 at 11–12. Although this testimony may create genuine issues of fact as to whether Defendant could claim a tip credit, because the Court concludes that Defendant's tip credit notice was insufficient, it need not decide these issues here.

employment with Defendant "when adding tips" and "was never compelled to share any portion of the tips she received." *Id.* at 15–16.  As such, Defendant concludes, Plaintiff "has thus alleged a mere 'informational injury' of the kind insufficient to establish Article III standing."  *Id.* at 16.

"The 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560–61).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 1548 (quoting *Lujan*, 504 U. S., at 560).  For an injury to be particularized, it must "affect the plaintiff in a personal and individual way." *Id*. (citation omitted).  "Concrete," although not "necessarily synonymous with 'tangible,'" means that the injury is "'real' and not 'abstract.'"  *Id*. at 1548–49.

As discussed above, before claiming a tip credit, an employer must provide notice as required by 29 U.S.C. § 203(m);  absent such notice, the employer may not claim a tip credit and must pay the full minimum wage.  *Reich*, 28 F.3d at 403.  Thus, Plaintiff's tip credit notice claim does not seek redress for a purely technical violation of the FLSA or a mere "informational injury;" rather, Plaintiff is seeking recovery for monetary harm.  That is, because Defendant failed to provide the required notice before it took the tip credit, it was required to pay Plaintiff (and other servers) the full minimum wage.  Its failure to do so constitutes a concrete, financial injury.  *See Reynolds v. Turning Point Holding Co.*, 2020 U.S. Dist. LEXIS 233883, at *13–14 (finding

standing because deficient tip credit notice "involves more than just a procedural violation; it involves financial harm.").

For the above reasons, the Court concludes that Plaintiff has standing to pursue her tip credit notice claim, and that Defendant's tip credit notice was deficient.  Accordingly, Plaintiff's Motion for Summary Judgment is granted with respect to her claim that Defendant's tip credit notice was deficient under the FLSA.

### 3.    Plaintiff's Dual-Jobs Claim

In addition to alleging that Defendant violated its minimum wage obligations under the FLSA by failing to provide compliant tip credit notice, Plaintiff also claims in Count I of the Complaint that Defendant further violated the FLSA by requiring its tipped employees to perform substantial amounts of non-tip-generating "side-work" while continuing to pay those employees a sub-minimum cash wage.

Pursuant to 29 U.S.C. § 203(t), an employee only qualifies as a "tipped employee" when they are "engaged in an occupation" from which they "customarily and regularly" derive $30 or more in tips per month.  Thus, under the "Dual Jobs" regulation, where an individual is employed in both a tipped and untipped occupation, the employer may only claim a tip credit for hours in which the employee is engaged in tip-generating work.  29 C.F.R. § 531.56.  The paradigmatic case arises when an employee literally holds two different jobs, one tip-generating and the other not.  *See Belt v. P.F. Chang's China Bistro, Inc.*, 401 F.Supp.3d 512, 530 (E.D. Pa. 2019) (citing 29 C.F.R. § 531.56(e)).  At the other end of the spectrum is a tipped employee who spends all, or almost all, of his or her time engaged in duties directly related to generating tips.  *Id.*  But application of the rule becomes more complicated in situations where a tipped employee spends a substantial part of her time engaged in duties not directly related to generating tips.  *Id.*  Beginning

15

in the late 1980s, the Department of Labor adopted the so-called "80/20 Rule," which interprets the Dual Jobs regulation to mean that if a tipped employee spends more than 20% of her time engaged in duties not directly related to her tip-generating work, her employer may not claim a tip credit for the non-tip-generating work time. *Id.* at 534. Although the Department of Labor issued an opinion letter in 2018 purporting to supersede the 80/20 rule, courts in this circuit have generally declined to defer to DOL's recent interpretation of the Dual Jobs regulation and continue to apply the 80/20 rule.[3] *See, e.g. id.* at 535 (finding that "DOL's current interpretation was issued decades after the tip credit provision was added to the FLSA, is unreasonable, and abandons decades of considered agency policy without explanation"); *Williams v. Bob Evans Rests., LLC*, 2:18-cv-01353, 2020 U.S. Dist. LEXIS 145852, at \*30–\*32 (W.D. Pa. Aug. 13, 2020) (concurring with *Belt* and declining to defer to 2018 opinion letter).

Under the FLSA, the employee "ordinarily bears 'the burden of proving that he performed work for which he was not properly compensated.'" *Rosano v. Twp. of Teaneck,* 754 F.3d 177, 188 (3d Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946)). Under *Anderson* and its progeny, once an employee has carried her burden of proving that she worked hours for which she was not properly compensated and "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence" negating the employee's evidence. *Anderson*, 328 U.S. at 687-88. "The burden of any consequent imprecision from the absence of an employer's records must be borne by that employer." *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1297 (3d Cr. 1991).

---

[3] Neither party directly argues that the Court should or should not give deference to DOL's 2018 opinion letter; however, Defendant, in a footnote, does reserve the right to rely on the opinion letter in the future. *See* ECF No. 58 at 23, n.4.

Under 29 U.S.C. § 211(c) an employer must "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."   Accordingly, the FLSA "'requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked.'" *Acosta v. Osaka Japan Rest., Inc.*, Civil Action No. 17-1018, 2018 U.S. Dist. LEXIS 115960, at * 29 (E.D. Pa. July 12, 2018) (quoting *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 138 (3d Cir. 1984)).   Furthermore, with respect to tipped employees, "[e]mployers are…required to keep records of the hours in which an employee receives tips, and the hours in which they do not— regardless of whether the Dual Jobs regulation applies." *Belt*, 401 F.Supp.3d at 537 (citing 29 C.F.R. § 516.28).

In her Complaint, Plaintiff alleges that she and other tipped employees working for Defendant spent a "substantial portion" (up to 30%, in Plaintiff's estimation) of their time engaged in non-tip-generating work and that Defendant nonetheless continued to claim the tip credit "despite the fact that these employees could not earn tips during this time."   ECF No. 1 at ¶¶ 65– 68.   In her Motion, Plaintiff seeks an order "barring Defendant from…asserting that records of its servers' work time are accurate."   ECF No. 55 at 20.   Defendant contends that Plaintiff has produced insufficient evidence to create a triable issue on her Dual Jobs claim—i.e. that Defendant failed to properly compensate her for allegedly excessive amounts of time spent performing side-work—and therefore requests summary judgment in its favor.   ECF No. 58 at 23.

Plaintiff testified that, while clocked in under the server job code, her side-work "generally…would take anywhere from an hour to two hours, sometimes more, especially on midnights."   ECF No. 63-1 at 171:18–21.   Plaintiff described tasks such as "rolling silverware"

17

and "checking day-dots"[4] as taking up to 45 minutes or more.  *See* ECF No. 63-1 at 41:9–12 and 193:5–10.  She also noted being required to bus tables, clean parts of the restaurant, assist with inventory, and, on a few occasions, wash dishes and take out the trash.  *Id.* at 191:14–24.  In addition, Plaintiff points to cleaning tasks listed in Defendant's training materials for new servers, which include items such as cleaning window ledges and blinds, pulling booths for vacuuming, and cleaning ice bins and beverage dispensers.  *See* ECF No. 56-16 at 48–49.

Plaintiff conceded that she never tracked her own side-work, and so was unable to provide precise information about which tasks she performed on any given day or, due to day-to-day variation, how long a given task took to perform.  That said, Plaintiff differentiated between "midnights" or "overnights," and "day" or "evening" shifts, noting that, when she worked "overnights, I am constantly doing side work and pretty much nothing else."  ECF No. 63-1 at 160:5–7.  Day or evening shifts were different, however, "because when you are working evenings and afternoons, you have other people there with you.  When you are working midnights, you have nobody.  So everything that was split up between two to four people is all on you.  So then you have everything to do."  *Id.* at 15–21.  The Court's review of Plaintiff's time records, ECF No. 59-2 at 9, reflects that Plaintiff worked 22 shifts (out of 37 total under the Server job code) where she clocked out after midnight, 19 of which she clocked out after 1:00 a.m.  This suggests that half or more of Plaintiff's shifts fall into the "midnight" or "overnight" category, which Plaintiff testified consisted of "constantly doing side work and pretty much nothing else."  ECF No. 63-1 at 160:6–7.

On the other side of the ledger, Defendant does not point to any evidence disputing Plaintiff's testimony about the type and duration of the side-work Plaintiff claims she performed.

---

[4] "[C]hecking day-dots" refers to the process of reviewing the expiration dates on perishable food items.  *See* ECF No. 63–1 at 43:15–44:2.

*See* ECF No. 58 at 20–23.   Indeed, Defendant's corporate representative conceded that Defendant requires servers to perform side-work but does not track the time spent on side-work if the server is clocked in under the "Server" job code.  *See* ECF No. 56-3 at 127:20–128:9;  130:22–131:2. Instead, relying on the Third Circuit's decision in *Rosano v. Teaneck*, Defendant argues that Plaintiff's testimony is speculative, and therefore insufficient as a matter of law to support her dual-jobs claim, "because she cannot offer any facts to support application of her high guesstimate, any more than she could offer facts to support application of her low guesstimate, or any number in between."  ECF No. 58 at 23.

*Rosano*, an overtime case involving a police department, however, is distinguishable.  In that case, the defendant township kept detailed records of its police officers' work schedules, including overtime, whereas the officers' only evidence was a spreadsheet which "failed to make clear whether each officer worked the entirety of his or her [shift] or how that [shift] fit into each officer's broader work period."  *Rosano*, 757 F.3d at 189.  Here, although Plaintiff has no written records reflecting her side-work, her testimony, coupled with documents produced by Defendant and the testimony of Defendant's corporate representative, establishes that Plaintiff was required to perform side-work as part of her duties on each shift.  Furthermore, Plaintiff's testimony about the difference between "day" shifts and "midnights" in terms of side-work could lead a reasonable jury to conclude that Plaintiff's side-work accounted for more than 20% of the hours she worked while clocked in under the Server job code, given that more than half of her shifts ended at midnight or later.  And, importantly, unlike the defendant township in *Rosano*, Defendant here did not keep detailed records with respect to the challenged time.

Thus, with respect to Defendant's Motion, viewing the record as a whole and considering the facts in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could

find for Plaintiff on her FLSA Dual Jobs claim in Count I.  Plaintiff's testimony, as detailed above, regarding the nature and extent of the side-work she typically performed while clocked in under the "Server" job code is sufficient to create a genuine issue of fact as to whether that side-work accounted for more than 20% of the time she was paid a sub-minimum wage.  As such, Defendant's Motion, to the extent it seeks judgment on Count I of the Complaint regarding Plaintiff's Dual Jobs claim, will be denied.

With respect to Plaintiff's Motion, on the other hand, and viewing the facts in the light most favorable to Defendant, the Court finds that Defendant required its tipped employees to perform non-tip-generating side-work but did not maintain records or track the time those employees spent performing such side-work when those employees were clocked in under the "Server" (i.e. sub-minimum wage) job code.  *See* ECF No. 56-3 at 127:20–128:9;  130:22–131:2. Thus, there is no genuine issue of material fact.  Rather, Defendant did not "keep records of the hours in which an employee receives tips, and the hours in which they do not," *Belt*, 401 F.Supp.3d at 537, as required by 29 C.F.R. § 516.28.  Therefore, Plaintiff's Motion will be granted with respect to the portion of Count I of the Complaint alleging that Defendant "[f]ailed to keep proper records of the time worked by its servers as required by the FLSA."  ECF No. 54-1.

### C.    Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1367

Finally, because the Court will deny Defendant's Motion for Partial Summary Judgment on Plaintiff's FLSA claims, it will also reject Defendant's invitation to "decline to exercise jurisdiction over [Plaintiff's] PMWA claims under 28 U.S.C. § 1367."  ECF No. 56 at 23.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.  With respect to Count I of the Complaint, Plaintiff's Motion

20

for Summary Judgment is granted with respect to (1) her claim that Defendant's tip credit notice was deficient under the FLSA and (2) her claim that Defendant failed to keep proper records of the time worked by its servers under the FLSA.  Plaintiff's Motion for Summary Judgment on the PMWA claims contained in Count II of the Complaint, however, is DENIED WITHOUT PREJUDICE, pending certification of a class under Federal Rule of Civil Procedure 23.

Defendant's Motion for Partial Summary Judgment and Motion to Dismiss are DENIED in full.

DATED this 25th day of February, 2021.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record