IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JULI WINTJEN, on behalf of herself and all
others similarly situated,

          Plaintiff,

    v.

DENNY'S, INC., DOE DEFENDANTS 1-
10,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

2:19-CV-00069-CCW

## OPINION

In this case, Plaintiff Juli Wintjen is pursuing claims on behalf of herself and other current

and former tipped employees of Defendant Denny's, Inc. for unpaid wages under both the Fair

Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  After

obtaining judgment in her favor on her individual FLSA claim, *see* ECF No. 73, Ms. Wintjen now

seeks conditional certification of a proposed FLSA collective under 29 U.S.C. § 216(b) ("FLSA

Motion" and "FLSA Collective"), *see* ECF No. 91, and certification of a state-wide class under

Federal Rules of Civil Procedure 23(a) and (b)(3) for her PMWA claims ("Rule 23 Motion" and

"Rule 23 Class"), *see* ECF No. 89.

## I.  Background

### A.  Procedural History

Ms. Wintjen filed her two-count Complaint on January 22, 2019.  *See* ECF No. 1.  In it,

she alleges that Denny's failed to pay its Pennsylvania "tipped employees"[1] the required minimum

---

[1] Under both the FLSA and PMWA, employers may pay an employee less than the statutory minimum wage if the employee receives more than $30 per month in tips.  *See* 29 U.S.C. §§ 203(m) and (t);  43 P.S. § 333.103(d) and 34 Pa. Code § 231.1(b).  The federal minimum cash wage for tipped employees is $2.13 per hour.  *See* 29 C.F.R. § 531.50. Pennsylvania, however, mandates a higher minimum cash wage for tipped employees of $2.83 per hour.  *See* 34 Pa. Code § 231.101.

wage under the FLSA (Count I) and the PMWA (Count II).  *See* ECF No. 1 ¶¶ 80–86 (Count I—FLSA), 87–94 (Count II—PMWA).  Ms. Wintjen—who worked as a server for Denny's from about September through the end of November 2017, *see* ECF No. 59-2 at 8—claims that these minimum wage violations happened in two ways:  (1) Denny's failed to properly notify its tipped employees of the tip credit,[2] which both the PMWA and the FLSA require an employer to do before it can credit tips against an employee's wages;  and (2) that Denny's' tipped employees were required to perform excessive amounts of "side work"—i.e. non-tip generating work—while being paid sub-minimum wage.  *See, generally,* ECF No. 1. ¶¶ 58–63 (tip credit) and 64–69 (side work).

This case was transferred to the undersigned on October 23, 2020.  *See* ECF No. 67.  At that time, the parties had already completed an initial phase of discovery "on all topics related to the merits of Plaintiffs' claims and potential class membership," ECF No. 39 ¶ 2;  ECF No. 49 ¶ 1, and the parties' cross-motions for summary judgment had been fully briefed.  *See* ECF Nos. 54–66.  Pursuant to the Second Case Management Order issued by then-presiding Judge J. Nicholas Ranjan, the Court would "set a schedule for briefing on any motions for conditional certification/class certification and a schedule regarding Phase 2 discovery *after* its summary-judgment decision."  ECF No. 49 ¶ 7 (emphasis added).

Accordingly, the Court ruled on the pending motions for partial summary judgment.  *See* ECF Nos. 72 (Opinion) and 73 (Order).[3]  After the parties attempted mediation, *see* ECF Nos. 78

---

[2] Under both the FLSA and the PMWA, an employer may, in certain circumstances and after meeting certain prerequisites, pay tipped employees less than the statutory minimum wage.  In sum, both laws allow the employer to count a portion of the tips earned by the employee towards the minimum wage owed by the employer to the employee. The amount of tips that an employer can or does count against its minimum wage obligation is referred to as the "tip credit."  *See* ECF No. 72 at 8–9.

[3] In summary, the Court granted Ms. Wintjen's Motion for Partial Summary to the extent she sought judgment on her individual claim that (1) Denny's failed to comply with the tip credit exception to the FLSA by not providing complete notice as required and (2) Denny's failed to keep proper records of the time, as required by the FLSA, its servers spent performing tipped and untipped work.  *See* ECF No. 73.  Denny's' Motion, on the other hand, was denied in full.

(Third Case Management Order), 82 (Order suspending deadlines to allow for mediation), 84 (Notice regarding results of mediation), the Court set a briefing schedule for Ms. Wintjen's FLSA Motion and Rule 23 Motion. *See* ECF No. 85. Those Motions have now been fully briefed and are ripe for disposition.

### B.   Relevant Facts

Having reviewed and considered the record, including the pleadings, the evidence submitted in connection with the FLSA Motion and the Rule 23 Motion, and the evidence submitted in connection with the parties' motions for partial summary judgment, the Court finds as follows for the purpose of resolving the instant Motions:

Denny's owns and operates a nationwide chain of restaurants, including, as relevant here, in Pennsylvania. During the proposed class and collective action periods,[4] Denny's operated 12 restaurants and employed approximately 1,000 tipped employees in Pennsylvania. *See* ECF Nos. 93-2 at 7–8, 93-3 at 7. Denny's maintained company-wide training and onboarding materials, including the Employee Guidebook and Important Wage and Hour Policies Summary Acknowledgment Form. *See* ECF Nos. 56-4 and 59-4. Denny's also provided its managers with standard onboarding and training materials, including an onboarding activity grid and checklist. *See* ECF No 59-4 at 4–5, 10–11. Denny's posted Pennsylvania and federal labor law posters in its restaurants. *See* ECF No. 93-2 at 11.

---

[4] The proposed Rule 23 Class would encompass tipped employees who worked for Denny's in Pennsylvania at any time from January 22, 2016 through August 1, 2019, provided that such employees were hired before January 1, 2019. *See* ECF No. 89. The proposed FLSA Collective would encompass tipped employees who worked for Denny's in Pennsylvania at any time from July 6, 2017 through August 1, 2019, again provided that such employees were hired before January 1, 2019. *See* ECF No. 91. The Court notes that Ms. Wintjen uses January 16, 2016 as the beginning date for the FLSA Collective period in her brief, *see* ECF No. 92 at 3; however, even in light of the statute of limitations issues discussed below in Section IV.C, because the statute of limitations for each opt-in plaintiff continues to run until that plaintiff files his or her written consent to join, the 2016 date would be outside the applicable limitations period for any opt-in plaintiff. *See Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 U.S. Dist. LEXIS 43375, at \*16–17 (E.D. Pa. Mar. 30, 2016).

In its responses to written discovery, Denny's stated that it provided tip credit notice as follows:

> [E]mployees would have been made aware of the tip credit during the hiring process where compensation was discussed, and during the onboarding and training process each server went through. Tip credit information was conveyed orally by the manager and/or trainer responsible for onboarding, and through written materials provided to or shown to employees upon hire or during onboarding and training. Written materials provided or shown to employees that contained information regarding the tip credit consisted of employee pay stubs; state and federal labor law posters; the Employee Guidebook; and the "Important Wage and Hour Policies Summary and Acknowledgment Form."

ECF No. 93-2 at 13.

Denny's' Rule 30(b)(6) corporate designee, Mr. Brian Hart, testified that Denny's claimed a tip credit for all Pennsylvania servers when they were clocked in under the "server" job code. *See* ECF No. 93-1 at 14–15. Mr. Hart also testified that the written materials described above would have been provided to every new server and that it was Denny's' expectation that its managers would use those materials when reviewing tip credit information with new hires at the time of onboarding. *See id.* at 6 (stating only one version of Employee Guidebook in use during relevant time period), 9–10 (stating that onboarding "policies for the Denny's, Inc. units were all, yeah, the same" and that it was Denny's' expectation managers would follow Denny's provided onboarding checklist), and 17 (stating that orientation and onboarding checklists "cover, you know, what should be covered in an orientation.").

That said, sometime in 2018, Denny's made Department of Labor Fact Sheet # 15 "available" to its managers. *See* ECF No. 93-2 at 20-21. Fact Sheet # 15 expressly sets forth the five pieces of information that an employer must provide to a tipped employee before claiming a tip credit to satisfy its notice obligation under the FLSA. *See* ECF No. 93-4. Mr. Hart testified, however, that he was unaware of any e-mail or memorandum either directly distributing Fact Sheet

# 15 to managers or providing guidance or instruction to managers regarding Fact Sheet # 15.  *See* ECF no. 56-3 at 19.

Ms. Wintjen was hired to work as a server at the Denny's location in Cranberry Township, Pennsylvania, beginning in September 2017.  *See* ECF No. 14 ¶ 16.  Ms. Wintjen's employment lasted for about nine weeks, at which point Denny's terminated her for job abandonment.  *See* ECF 59-2 at 17.  Ms. Wintjen was onboarded by Denny's manager Madeleine Weinel, who provided a sworn declaration in this case.  *See* ECF no. 56-13.  In her declaration, Ms. Weinel describes the regular "practice" she followed when onboarding new servers, and states that she adhered to that practice when she onboarded Ms. Wintjen.  *See id.* ¶¶ 5–11, 14.  Specifically, Ms. Weinel states in her declaration that she verbally informed Ms. Wintjen and the approximately 40 other new servers she onboarded during the class and collective period of the first four pieces of the required notice under the FLSA.  *See id.* ¶¶ 4, 7.

The Court also notes that in resolving the parties' Motions for Partial Summary Judgment, the Court found that Denny's' written materials—*i.e.*, the onboarding checklists, the Employee Guidebook, Wage and Hour Acknowledgement, etc.—were insufficient to satisfy Denny's' tip credit notice obligation under the FLSA.  *See* ECF No. 72 at 12–13.  The Court further found that Ms. Weinel's declaration confirms that Ms. Weinel did not verbally provide Ms. Wintjen with complete tip credit notice.  *See id.*  Thus, although Ms. Wintjen testified that Denny's' managers had informed her about how she would be paid—*i.e.,* a reduced cash wage plus tips—*see* ECF No. 99 at 2, no combination of written and/or verbal notice sufficed to provide Ms. Wintjen with the complete notice required under the FLSA.  *See* ECF No. 72 at 12–13.  Furthermore, the Court found that Denny's failed to keep complete records, as required under the FLSA and its

implementing regulations, of the time Ms. Wintjen (or any other server) spent performing tipped and untipped work.  *See id.* at 20.

## II.      Denny's Preliminary Arguments

Before addressing the substance of Ms. Wintjen's Rule 23 Motion, we first address a pair of preliminary arguments raised by Denny's regarding (1) whether Ms. Wintjen has Article III standing to pursue the PMWA claim and (2) whether the PMWA incorporates a less demanding tip credit notice standard than the FLSA.

### A.      Ms. Wintjen Has Article III Standing

Denny's first argues that Ms. Wintjen lacks standing to bring her PMWA tip credit claim. This argument is functionally identical to the argument Denny's made at summary judgment regarding Ms. Wintjen's FLSA tip credit claim.  Indeed, in its brief, Denny's simply incorporates by reference the argument it made at summary judgment that any deficiency in the tip credit notice it provided amounted to nothing more than a procedural harm, meaning Ms. Wintjen lacks standing because she has not suffered an injury-in-fact.  *See* ECF No. 99 at 6.  The Court has already considered—and rejected—this argument.  *See* ECF No. 72 at 13–15.  As such, we conclude, for the reasons set forth at summary judgment, that Ms. Wintjen has Article III standing to pursue her PMWA tip credit notice claim.

### B.      The PMWA "Substantially Parallels" the FLSA

Next, Denny's argues that we should not apply the general rule that "[b]ecause the PMWA 'substantially parallels' the FLSA, …federal courts are directed to interpretation of the FLSA when analyzing claims under the PMWA."  *Razak v. Uber Tech., Inc*., No. 16-573, 2016 U.S. Dist. LEXIS 139668, at *22 (E.D. Pa. Oct. 7, 2016);  *see also Rui Tong v. Henderson Kitchen, Inc.,* No. 17-1073, 2018 U.S. Dist. LEXIS 176294, at *6–7 (E.D. Pa. Oct. 12, 2018) (same);  *see* ECF No. 99 at 7–8.  Denny's offers three reasons in support of this position:  (1) "the language of the PMWA

and FLSA tip credit provisions is not identical;"  (2) Pennsylvania courts "have specified a less rigid standard [for the PMWA] than the FLSA;"  and (3) Pennsylvania "has not—after 9 years— adopted the Department of Labor's regulation interpreting the notice requirements." *Id.* at 8.

Our analysis begins with the text of the PMWA.  As amended in 1998, Section 333.103(d) of the PMWA states, in relevant part, as follows:

> In determining the hourly wage an employer is required to pay a tipped employe,[5] the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph;  and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act.  The additional amount on account of tips may not exceed the value of tips actually received by the employe.  *The previous sentence shall not apply with respect to any tipped employe unless*:
>
> (1) Such employe has been informed by the employer of the provisions of this subsection;
>
> (2) All tips received by such employe have been retained by the employe *and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect;  where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe*;  except that this subsection shall not be construed to prohibit the pooling of tips among employes who customarily and regularly receive tips.

43 P.S. § 333.103(d) (emphasis added).  Denny's' textual argument focuses on the two italicized provisions above, contending that this Court must "interpret [Section 333.103(d) of the PMWA] independent of the FLSA" because the PMWA contains (1) a "legislative drafting error" resulting from a 1998 amendment that effectively "eliminates the tip credit notice requirement" and (2) additional language in Section 333.103(d)(2) (italicized above) that does not appear in Section 203(m) of the FLSA.  ECF No. 99 at 8–10.  However, Denny's' textual argument is not persuasive

---

[5] As defined in the PMWA, employee is spelled "employe."  *See* 43 P.S. § 333.103(h).

because, on closer inspection, neither the purported drafting error nor the additional language in Section 333.103(d)(2) result in the PMWA having a "less rigorous" notice requirement than the FLSA.

First, Denny's' conclusion that the 1998 amendment "eliminate[d] the tip credit notice requirement" does not necessarily follow from the premise that the 1998 amendment introduced a "legislative drafting error." ECF No. 99 at 8. According to the Pennsylvania Supreme Court, "[w]hen the provisions of a statute contain an obvious error, the Act is to be construed to give effect to the evident legislative intent as gathered from the entire Act." *Ford Motor Co. v. Commonwealth*, 507 A.2d 49, 54 n.6 (Pa. 1986). Thus, rather than mechanically apply what appears to be a clear error in the statutory text of Section 333.103(d), we will instead construe the PMWA to "give effect to the evident legislative intent *as gathered from the entire Act*." *Id.* (emphasis added).

Pennsylvania's rules of statutory construction guide our analysis. First, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. § 1921(a). And, "[w]hen the *words* of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b) (emphasis added). Furthermore, "[i]n ascertaining the intention of the General Assembly" courts may presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922. Finally, "[i]n no case shall the punctuation of a statute control or affect the intention of the General Assembly in the enactment thereof but punctuation *may be used* to aid in the construction thereof if the statute was finally enacted after December 31, 1964." 1 Pa. C.S. § 1923(b) (emphasis added).

With these principles in mind, we observe that Denny's' reading would do more than just neuter the tip credit notice requirement.  It would instead allow employers to skirt their minimum wage obligations to tipped employees altogether.  This is because the only provision that would "not apply" if an employer failed to give notice is "[t]he additional amount on account of tips may not exceed the value of tips actually received by the employe."  Thus, by failing to give notice, an employer could claim the full tip credit (*i.e.,* the difference between the regular minimum wage and the reduced tipped employee minimum wage) regardless of whether the employee actually earned enough in tips to make up the difference between the tipped minimum wage and the regular minimum wage.  This is exactly the sort of labor practice the General Assembly expressly sought to curb when it enacted the PMWA:

> Employes are employed in some occupations in the Commonwealth of Pennsylvania for wages unreasonably low and not fairly commensurate with the value of the services rendered. Such a condition is contrary to public interest and public policy commands its regulation. Employes employed in such occupations are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and "freedom of contract" as applied to their relations with their employers is illusory. Judged by any reasonable standard, wages in such occupations are often found to bear no relation to the fair value of the services rendered. In the absence of effective minimum fair wage rates for employes, the depression of wages by some employers constitutes a serious form of unfair competition against other employers, reduces the purchasing power of the workers and threatens the stability of the economy. The evils of unreasonable and unfair wages as they affect some employes employed in the Commonwealth of Pennsylvania are such as to render imperative the exercise of the police power of the Commonwealth for the protection of industry and of the employes employed therein and of the public interest of the community at large.

42 P.S. § 333.101 ("Declaration of Policy").  Furthermore, it appears that the purported "legislative drafting error" does not consist of the omission or inclusion of any word or words, but is the result of errant punctuation;  specifically, the 1998 amendment replaced the colon separating "…under section 4 of this act" from "[t]he additional amount" in the pre-1998 version of the PMWA with a period.  *Compare* 1988 Pa. Laws 150 *with* 1998 Pa. Laws 168.

Given (1) the clear and unequivocal statement of legislative purpose in Section 333.101; (2) the incompatibility of that statement of purpose with Denny's' reading of Section 333.103(d); (3) the unreasonable and absurd results that would flow if Denny's' reading of Section 333.103(d) were to be given effect; and (4) the fact that correcting the "legislative drafting error" would require the Court to revise only one errant punctuation mark, the Court rejects Denny's' preferred reading of Section 333.103(d) because it would lead to absurd results and instead concludes that the 1998 amendment to the PMWA did not "eliminate[] the tip credit notice requirement."

Next, Denny's argues that the inclusion of the following language in PMWA Section 333.103(d)(2), which does not appear in FLSA Section 203(m), means that the PMWA cannot be found to "substantially parallel" the FLSA:  "and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect;  where the gratuity is added to the charge made by the establishment, either by the management, or by the customer, the gratuity shall become the property of the employe."  Of course, as Pennsylvania courts have consistently observed, "[t]he FLSA…'establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded.'"  *Heimbach v. Amazon.com, Inc.*, 255 A.3d 191, 201 (Pa. 2021) (quoting *Chevalier v. Gen. Nutrition Ctrs., Inc.*, 220 A.3d 1038, 1055 (Pa. 2019)).  And, Pennsylvania courts have departed from interpreting the PWMA in light of the FLSA where the legislative text and history of the PMWA do not follow that of the FLSA.  *See id.* at 201–02 (declining to apply FLSA's preliminary/postliminary activities exclusion from "hours worked" to PMWA where the Pennsylvania legislature had adopted no similar provision).  Here, however, the PMWA and FLSA tip credit provisions do in fact closely resemble each other and, if anything, the additional language

10

in the PMWA highlighted by Denny's would only cause the PMWA's notice requirement to be more onerous, not less, than the FLSA's. *Compare* 43 P.S. § 333.103(d) *with* 29 U.S.C. § 203(m).

Denny's remaining two arguments likewise fail to show that the PMWA tip credit notice provision must be interpreted separately from the parallel provision in the FLSA. First, Denny's' position that Pennsylvania courts have interpreted the PMWA as incorporating a less rigorous notice standard than the FLSA relies on two cases, neither of which is on point. Denny's notes that the Commonwealth Court in *Golfview Manor, Inc. v. Commonwealth, Department of Labor & Industry*, "observed that '[t]he Minimum Wage Law clearly recognizes tips as an acceptable source for monies to meet the set percentage for an employer's minimum wage obligation, provided the employee knows of the practice and directly receives these tips.'" ECF No. 99 at 10 (citing 414 A.2d 722, 725 (Pa. Commw. Ct. 1980)). But, critically, the *Golfview Manor* court was not addressing the required elements of notice under the PMWA's tip credit provision. Indeed, beyond quoting the pre-1998 amendment version of Section 3(d) in a footnote, the court conducted no analysis of the statute's notice provision. Instead, the court was asked to decide whether tips may be considered as wages at all. And, in deciding that question, the Commonwealth Court's opinion reaches the conclusion that, under the PMWA, tips may only count towards an employer's minimum wage obligation if tipped employees (1) have notice and (2) retain their tips.

Denny's also points, in a footnote, to *Ford v. Lehigh Valley Restaurant Group, Inc.*, 47 Pa. D. & C.5th 157 (C.P. 2015). ECF No. 99 at 10–11 n.4. In that case plaintiffs alleged only violations of the PMWA's tip pooling provisions (*i.e.,* they did not plead any claim under the FLSA). *See id.* at 159. In ruling on the defendant's preliminary objections (analogous to a Rule 12 motion), the court noted that "[l]ike the FLSA, the [P]MWA provides that the tip credit calculation 'shall not apply with respect to any tipped employee unless: (1) [s]uch employe has

been informed by the employer' of the tip credit arrangement; and '(2) [a]ll tips received by such employe have been retained by the employe....'  *Id.* at 168.  Leaving aside the fact that the court substituted its own less restrictive formulation—*i.e.* "of the tip credit arrangement"—for the statute's more specific requirement that employers provide notice "of the provisions of this subsection," the court's decision in *Ford* in fact follows the general proposition that the PMWA should be interpreted in light of parallel provisions found in the FLSA.  *See id.* at 166–68 (interpreting PMWA tip-pooling provision in light of parallel provision under the FLSA).  Thus, neither *Golfview Manor* nor *Ford* compel the conclusion that Denny's urges here.

Finally, the Court is not persuaded that the absence of any state regulation paralleling 29 C.F.R. § 531.59 indicates, one way or the other, how we should read the PWMA here.  As this Court and others have noted, 29 C.F.R. § 531.59 simply sets forth, "in plain English, no more and no less than what" is required for tip credit notice under the FLSA.  ECF No. 72 at 11;  *see also Nat'l Rest. Ass'n v. Solis*, 870 F.Supp.2d 42, 56 (D.D.C. 2012)[6]—  And, comparing PMWA Section 333.103(d) with the FLSA Section 203(m), the Court finds that both statutes require, at a minimum, that an employer notify a tipped employee (1) of the employee's cash wage;  (2) of the "additional amount" of the tip credit;  (3) that the "additional amount" cannot exceed the tips actually earned;  (4) that the employee is to retain all tips;  and (5) that the tip credit will not apply to any employee unless the employer has informed the employee "of the provisions of this

---

[6] Indeed, the Court notes that the Eleventh Circuit recently confirmed, in another case involving Denny's, that 29 C.F.R. § 531.59 did nothing more than make explicit what Section 203(m) of the FLSA already requires:

> Before the Department [of Labor] issued 29 C.F.R. § 531.59 in 2011, there was some dispute about whether 29 U.S.C. § 203(m)(2)(A) required the fifth item that the regulation identifies.  *See Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 556 (7th Cir. 2016) (holding that conveying this information was not required by the statute itself, and that 29 C.F.R. § 531.59 did not govern conduct before its issuance in 2011).  But the regulation makes this explicit, and Denny's does not dispute that the regulation applies to Rafferty's claims.

*Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1193 n.21 (11th Cir. 2021).

subsection." *Compare* 29 U.S.C. § 203(m) *with* 43 P.S. § 333.103(d).[7]  The Court therefore rejects

Denny's' argument that the PMWA incorporates a "less rigorous" notice requirement than the

FLSA, and instead concludes that, because the PMWA notice requirement "substantially parallels"

that of the FLSA, interpretations of the FLSA are relevant to guiding our analysis of Ms. Wintjen's

PMWA claims.  *See Razak*, 2016 U.S. Dist. LEXIS 139668 at *22.

## III.     Motion for Class Certification under Rule 23(a) and (b)(3)

For purposes of her PMWA tip credit notice claim only,[8] Ms. Wintjen seeks certification

of a proposed class pursuant to Rule 23(a) and (b)(3) consisting of:

> All Tipped Employees who worked for Defendant in the Commonwealth of
> Pennsylvania between January 22, 2016 and August 1, 2019, and were hired prior
> to January 1, 2019 (the 'Pennsylvania Class').

ECF No. 89.  In opposition, Denny's argues that class certification should be denied because Ms.

Wintjen has failed to meet her burden on the Rule 23(a) requirements of typicality and adequacy

and the Rule 23(b)(3) requirements of predominance and superiority.  ECF No. 99 at 13–20.

### A.     Standard of Review

A lawsuit may only be certified as a class action if the requirements of Federal Rule of

Civil Procedure 23 are satisfied.  *See Reinig v. RBS Citizens, N.A.,* 912 F.3d 115, 124–25 (3d Cir.

2018) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348 (2011)).  "Courts determine

whether class certification is appropriate by conducting a two-step analysis."  *Id.*  First, the court

must assess whether plaintiff has satisfied the prerequisites of Rule 23(a), and then it must

determine whether plaintiff has met the requirements of either Rule 23(b)(1), (2), or (3).  *See In re*

---

[7] As noted above, the additional language in Section 333.103(d)(2) may, in fact, require more.  But, since the FLSA establishes the national floor, *see Heimbach* 255 A.3d at 201, and the Court is unaware of any Pennsylvania court having considered the exact contours of the PMWA tip credit notice requirement, we need not decide, for the purpose of resolving Ms. Wintjen's Rule 23 Motion, whether the PMWA in fact requires more.

[8] Ms. Wintjen does not seek class certification for any dual-jobs claim under the PMWA.  *See* ECF No. 99 at 5–6.

*Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016) (quoting *Marcus v. BMW of N.A., LLC*, 687 F.3d 583, 590 (3d Cir. 2012)).

> In order to satisfy Rule 23(a), plaintiff must show:
>
> (1) the class is so numerous that joinder of all members is impracticable;  (2) there are questions of law or fact common to the class;  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;  and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4).  Here, Ms. Wintjen seeks certification under Rule 23(b)(3), *see* ECF No. 89, which requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Because "[t]he commonality and predominance requirements are closely linked, …'where an action is to proceed under Rule 23(b)(3), the commonality requirement [in Rule 23(a)(2)] is subsumed by the predominance requirement.'"  *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008)).  As such, the Court will address commonality and predominance together. *See Reinig*, 912 F.3d at 127.  Finally, "[a]scertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23;"  accordingly, a plaintiff seeking class certification under Rule 23(b)(3) must also establish that the proposed class is "ascertainable," meaning that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).

Importantly, "the decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met.'" *In re Modafinil*, 837 F.3d at 248–49 (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008)).  Furthermore, in resolving a motion for class certification under Rule 23, the district court "'must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action.'" *Id.* at 249 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 307).  As such, "[c]lass certification is proper only if the district court is satisfied, 'after a rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'"  *Reinig*, 912 F.3d at 125 (quoting *Marcus*, 687 F.3d at 591)).

### B.    Ascertainability

As noted above, to establish that the proposed class is ascertainable, a plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).  Here, the proposed class is defined using objective criteria, namely, whether a putative class member worked in Pennsylvania for Denny's in a tipped role during the class period.  *See* ECF No. 89.  And, because Denny's maintains records of its restaurant employees, reference to those records provides "a reliable and administratively feasible mechanism" for determining class membership.  Furthermore, Denny's offers no argument or evidence suggesting that the proposed class here is not ascertainable.  The Court therefore finds that the proposed class is ascertainable.

### C.      Rule 23(a) Factors

#### 1.      Numerosity

A plaintiff satisfies Rule 23(a)'s numerosity requirement if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Although there is no minimum number of class members required to meet the numerosity requirement, our Court of Appeals has said that "'generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.'"  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–250 (3d Cir. 2016) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).  Here, Ms. Wintjen points to Denny's' written discovery responses, which establish that, for the period encompassed by Ms. Wintjen's proposed class definition, Denny's employed approximately 1,000 servers in Pennsylvania.  *See* ECF No. 90 at 11;  *see also* ECF No. 93-3 at 6–7.  Denny's does not challenge numerosity here.  *See* ECF No. 99 at 13–17 (challenging Rule 23(a) elements of adequacy and typicality only).  Accordingly, the Court finds that Ms. Wintjen has satisfied the numerosity requirement of Rule 23(a)(1).

#### 2.      Typicality

Under Rule 23(a)(3), the named plaintiff's claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  This requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427–28 (3d Cir. 2016) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)) (cleaned up).  The Third Circuit has set a "low threshold for typicality," *id.* (quoting *Newton*, 259 F.3d at 183), such that "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or

16

where the claim arises from the same practice or course of conduct." *Id.* at 428 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)) (cleaned up).

Ms. Wintjen contends that the typicality requirement is met here because "Plaintiff and the absentee class members all assert the same claim – Defendant's violation of the PMWA – based on Defendant's common conduct of improperly claiming a tip credit" and because "Plaintiff and the absentee class members seek the same relief for Defendant's violations – repayment of the tip credit improperly claimed." ECF No. 90 at 14.

Denny's counters that typicality has not been met here for two reasons. First, Denny's argues that the specific facts underpinning Ms. Wintjen's tip credit notice claim diverge from those of the putative PMWA Class. *See* ECF No. 99 at 13–14. Denny's notes that the Complaint alleges that Denny's "failed to inform their Tipped Employees of (i) their intention to take the tip credit, and (ii) the amount Defendant intended to claim as a tip credit." ECF No. 1 ¶ 59. However, record evidence shows "that Denny's did supply Plaintiff with at least these two pieces of information," ECF No. 99 at 14. As such, Denny's posits that Ms. Wintjen's PMWA claim diverges from those of the putative class members because "[o]ther members of the class—based on the allegations in the Complaint—would want to demonstrate that the managers who onboarded them failed to provide one or both of the two pieces of information Plaintiff pleaded in paragraph 59 of her Complaint." *Id.* Second, Denny's argues that Ms. Wintjen's PMWA claim is atypical because "absent a reversal of the Court's [summary judgment] decision on appeal—Plaintiff is foreclosed from recovering under the PMWA due to the decision she obtained on her FLSA tip credit claim finding Denny's liable." *Id.* at 15.

Neither of Denny's arguments are convincing. First, whether or not there is some divergence between the precise factual underpinnings of Ms. Wintjen's claim and the claims of the absent class members, precedent in this Circuit is clear that "[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re NFL,* 821 F.3d at 428 (citation omitted). Here, both of those conditions are met: the claims of Ms. Wintjen and the putative class members are based on the same legal theory (*i.e.* Denny's failed to provide compliant tip credit notice) and arise from the same practice or course of conduct (*i.e.* Denny's' allegedly deficient company-wide policies and procedures). And, second, the question of whether Ms. Wintjen can ultimately obtain a recovery for her PMWA separate from her FLSA claim does nothing to lessen her interest in pursuing the PMWA claim now, given that no final judgment on any individual or class claim has yet been rendered in this case. Indeed, as Denny's itself notes, Ms. Wintjen's earlier success on her individual FLSA tip credit claim is still subject to appeal. As such, the Court finds that Ms. Wintjen has satisfied the typicality requirement.

### 3.      Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation; and (2) class representatives have no conflicts of interests." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012) (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)).

Denny's does not challenge the competency or qualifications of Ms. Wintjen's counsel. Furthermore, Ms. Wintjen's counsel has ably represented classes of plaintiffs in other wage and

hour lawsuits, including cases recently litigated in this district.  *See* ECF No. 93 ¶¶ 40–55;  *see also* ECF No. 93-5.  Accordingly, the Court finds that Ms. Wintjen's attorneys will adequately represent the interests of the class in this case.

Ms. Wintjen argues that she is an adequate representative because "there is no evidence of any conflicts of interest between Plaintiff and members of the Class.  Rather, Plaintiff shares the same claims under the PMWA as the other Class members, and each Tipped Employee will likely benefit from this litigation."  ECF No. 90 at 15.  Denny's, however, argues that Ms. Wintjen is not an adequate class representative because (1) she succeeded on her individual FLSA claims at summary judgment and (2) she "made untrue allegations in her class complaint, which she was compelled to admit were not true during her deposition, raising a serious question about her credibility."  ECF No. 99 at 16–17.  In other words, Denny's levels essentially the same arguments here as it did with respect to typicality.

First, Ms. Wintjen's success at summary judgment on her individual FLSA claim does not create a conflict between her and the proposed class.  The FLSA and the PMWA are separate vehicles for recovery of allegedly unpaid wages, and Ms. Wintjen's earlier (but not yet final) success on the former does not put her at odds with a class whose claims are based on the latter.  Second, although "[t]he credibility of the named plaintiff is relevant to the adequacy requirement,…only significant credibility concerns that 'go to the heart of the claims or defenses' at issue in the case will create a risk of inadequate representation."  *Williams v. Sweet Home Health Care, LLC*, 325 F.R.D. 113, 123 (E.D. Pa. 2018) (citations omitted).  The discrepancies between the Complaint and Ms. Wintjen's testimony highlighted by Denny's do not rise to that level.  Indeed, Ms. Wintjen's success at summary judgment on her analogous individual FLSA tip credit claim—which was generally based on evidence obtained from (1) Denny's' Employee Guidebook

and other onboarding forms and materials, (2) Denny's' corporate representative, and (3) the manager who onboarded Ms. Wintjen—suggests that Ms. Wintjen's personal credibility is unlikely to play a significant role in this case.  Accordingly, the Court finds that Ms. Wintjen is an adequate class representative.

### D.      Rule 23(b)(3) Factors

#### 1.      Predominance

As noted above, "'where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement.'"  *Ferreras,* 946 F.3d at 185 (citation omitted).  This is because, although similar, "the 'predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members.'"  *Reinig*, 912 F.3d at 127 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).  Accordingly, and because Denny's does not specifically challenge whether commonality can be met here, the Court will "analyze the two elements together."  *Id*.

The Rule 23(b)(3) predominance requirement "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  Importantly, "[a]n individual question is one where members of a proposed class will need to present evidence that varies member to member, while a common question is one where the same evidence will suffice for each member."   *Id.* (internal quotations and citations omitted).  Accordingly, "[a]t the class certification stage, the predominance requirement is met only if the district court is convinced that 'the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members.'"  *Reinig*, 912 F.3d at 127–28 (quoting *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir.

2018)).  "In practice, this means that a district court must look first to the elements of the plaintiffs'
underlying claims and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of
the available evidence and the method or methods by which [the] plaintiffs propose to use the
evidence to prove' those elements."  *Id.* at 128 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d
583, 600 (3d Cir. 2012)).  Where "'proof of the essential elements of the [claim] requires individual
treatment, then class certification is unsuitable.'"  *Id.* (quoting *Newton v. Merrill Lynch, Pierce,
Fenner & Smith Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).  And as with every other required element
of class certification, the plaintiff must show that the predominance requirement "has been met by
a preponderance of the evidence at the time of class certification."  *Ferreras v. Am. Airlines, Inc.*,
946 F.3d 178, 184 (3d Cir. 2019).

The parties appear to agree that the common (and claim determinative) issue for this case
is the content of the tip credit notice Denny's provided to its Pennsylvania servers.  That is, Ms.
Wintjen maintains that "'[t]he predominant questions of fact and law for the class relate to how
[Defendants] notified tipped employees of the tip credit and calculated all tipped employees'
minimum wage.'"  ECF No. 90 at 16 (quoting *Koenig v. Granite City Food & Brewery, Ltd.*, No.
16-1396, 2017 U.S. Dist. LEXIS 71809, at *13 (W.D. Pa. May 11, 2017) (Kearney, J.)).
Specifically, Ms. Wintjen points out that "Defendant claimed a tip credit despite failing to meet
all of the requirements to do so, and thus treated all Tipped Employees in the same manner by
denying them the full minimum wage.  Thus, 'common questions predominate over individual
issues' as this matter 'turns on a company-wide policy, equally applicable to all class members.'"
*Id.* at 17 (quoting *Stone v. Troy Constr., LLC*, No. 3:14cv306, 2015 U.S. Dist. LEXIS 161009, at
*18 (M.D. Pa. Dec. 1, 2015)).  Denny's argues in opposition that this common issue is not
susceptible to common proof because "[t]he primary fact of import here is what Denny's managers

or trainers told new employees during the onboarding process" and that "[w]hat documents class members received, and what oral communications occurred, cannot be resolved through class representative proof."  ECF No. 99 at 19–20.

We begin with the essential elements of the proposed class's claims.  To succeed on their PMWA minimum wage claim, Ms. Wintjen and the putative class will need to prove three elements:  (1) that each of them was an employee within the meaning of the PMWA;  (2) that Denny's was their employer within the meaning of the PMWA;  and (3) that Denny's failed to pay them the minimum wage required under the PMWA.  *See* 43 P.S. § 333.103 (Definitions) and § 333.104 (Minimum Wages);  *c.f. Slater v. Yum Yum's 123 ABC ,* No. 2:20-cv-00382-JMG, 2021 U.S. Dist. LEXIS 101251, at *4–5 (E.D. Pa. May 28, 2021) (stating elements of *prima facie* minimum wage claim under FLSA).  Here, however, just as important as what Ms. Wintjen and the class will need to prove to succeed on their PMWA claim is what they will not need to prove: under applicable precedent applying the FLSA's analogous tip credit provision, the Third Circuit has held that "[i]f the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage."  *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) (citing *Martin v. Tango's Restaurant, Inc*., 969 F.2d 1319, 1322–23 (1st Cir. 1992);  *accord. Richard v. Marriott Corp*., 549 F.2d 303, 305 (4th Cir. 1977) ("What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a…credit from the receipt of tips toward your obligation to pay the minimum wage.").  "The notice requirement is a firm one," *Reich,* 28 F.3d at 404, and, as such, "the employer bears the burden of showing that it satisfied the notice requirement."  *Casco v. Ponzios RD, Inc*., Civil No. 16-2084 (RBK/JS), 2019 U.S. Dist. LEXIS 65320, at *12 (D.N.J. Apr. 17, 2019);  *see*

*also Clews v. Cty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (reciting general rule that an FLSA exception "is a matter of affirmative defense on which the employer has the burden of proof.'") (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974)).

As noted above, the parties have conducted discovery related to class certification.  The relevant evidence in the record (including what the parties submitted at summary judgment) consists of:  Denny's' responses to written discovery requests;  Ms. Wintjen's testimony;  the testimony of Denny's' Rule 30(b)(6) corporate designee Mr. Hart;  the declaration of Ms. Weinel, who, in addition to onboarding Ms. Wintjen, states that she onboarded some 40 servers while working for Denny's;  Denny's written employee onboarding and training materials, including Denny's' Employee Handbook, onboarding checklists, and Important Wage and Hours Policies Summary and Acknowledgment Form;  federal and state labor law posters;  and Department of Labor Fact Sheet # 15.[9]

This evidence shows that Denny's maintained a company-wide tip credit notice policy, encapsulated in Denny's' written employee onboarding/training documents.  Mr. Hart conceded that it was Denny's' expectation that the information contained in these written materials is the tip credit information that Denny's expected would be provided to all new hires.  During the proposed class period, none of these written materials incorporate the required fifth notice item—*i.e.*, that the tip credit will not apply to any employee unless the employer has informed the employee "of the provisions of this subsection."  And, although the evidence shows that, in addition to the written materials, Denny's' managers and trainers communicated tip credit information to new hires verbally—for example, Ms. Wintjen testified that parts of the tip credit notice were verbally

---

[9] In general, evidence submitted in connection with the parties' cross-motions for partial summary judgment is located at ECF Nos. 56, 59, 61, 63, and 65.  *See also* ECF No. 72 at 2–4 (undisputed material facts for purposes of summary judgment).

communicated to her by different managers (in addition to Ms. Weinel) in the course of her being hired and onboarded—Ms. Weinel's declaration supports the inference that Denny's' managers adhered to the written forms and documents provided by Denny's. Indeed, there is no evidence in the record that any manager working for Denny's in Pennsylvania during the proposed class period ever verbally provided all five required notice items.

In sum, the documentary evidence, coupled with Mr. Hart's testimony, would be sufficient to establish class-wide liability. That is, together, those pieces of evidence would establish that Denny's claimed a tip credit against the wages paid to its servers and that the information Denny's provided to class members regarding the tip credit fell short of what is required under the PMWA. Furthermore, based on the available evidence, Denny's' affirmative defense (*i.e.*, that complete notice was provided) likewise does not truly depend on an individualized inquiry into the exact notice received by each class member.

First, there is no evidence that any Denny's manager or trainer in Pennsylvania during the proposed class period was ever instructed to provide all five required notice items. For example, while Denny's did make DOL Fact Sheet # 15 (which includes all five pieces of information) "available" to its managers beginning sometime in 2018, according to testimony from Mr. Hart, no memo, instruction, or any other directive on how to use, interpret, or apply Fact Sheet # 15 was ever given to any managers. Furthermore, the only evidence in the record pertaining to any individual manager comes from Ms. Weinel, who states in her declaration that, at least with respect to the 40 servers she onboarded, she had an established "practice" of providing tip credit notice by reviewing Denny's' standard onboarding forms and documents with new servers. She does not indicate that she ever received or reviewed Fact Sheet # 15 herself, for example, nor does her

24

declaration state that she ever used Fact Sheet # 15 (or any other statement of the five required notice items) when onboarding a new server.

Thus, given the uniform content of Denny's standard onboarding materials, and because it appears that no Denny's manager was even provided "access" to Fact Sheet # 15 by Denny's until sometime in 2018, Denny's affirmative defense first depends on evidence that a manager (1) received and reviewed Fact Sheet # 15 (or some other source of information providing accurate guidance on tip credit notice requirements) and then (2) deviated from Denny's' standard forms and checklists by incorporating such information in his or her onboarding practices. Currently, there is no such evidence in the record before the Court. And, even if there were such evidence in the record, it would only apply to servers onboarded by a particular manager *after* that manager obtained the complete tip credit notice information *and* incorporated that information into his or her practices—that is, a subset of a subset of the putative class.

In other words, no individualized inquiry into the precise notice received by any individual class member is needed *unless* there is first evidence that a particular manager deviated from Denny's company-wide onboarding materials. The burden of proving of such a deviation—that is, proof that Denny's complied with the PMWA notice requirement when it onboarded certain servers—rests with Denny's. And, despite having engaged in class certification-related discovery, Denny's has offered no evidence that Ms. Wintjen's onboarding experience was different from that of any other Pennsylvania server, or that any of its Pennsylvania managers deviated from its standard company-wide onboarding documents. Accordingly, while it is no doubt true that Ms. Wintjen bears the burden of establishing predominance by a preponderance of the evidence, that only means she must demonstrate that the essential elements of the proposed class's PMWA minimum wage claim is "'capable of proof at trial through evidence that is common to the class

rather than individual to its members.'"  *Reinig*, 912 F.3d at 127–28 (quoting *Gonzalez*, 885 F.3d at 195).  Based on the foregoing review of the evidence in the record, the Court concludes that she has done that here.  Furthermore, Denny's' argument—unsupported by any evidence in the record—that individualized proof is needed fails to undermine Ms. Wintjen's evidence such that certification would be improper.  *See Tyson Foods*, 577 U.S. at 453 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1778, pp. 123–124 (3d ed. 2005) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses *peculiar to some individual class members*.'" (emphasis added)).

A few additional considerations germane to the Court's reasoning here bear some further discussion.  First, Denny's points out that "'as a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action.'"  ECF No. 99 at 19 (quoting *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190 (3d Cir. 2001).  But, in the cases Denny's points to, the court's decision on class certification centered on whether proof of an essential element of each class member's claim depended on proof of verbal communications, as opposed to an affirmative defense.  Furthermore, in each of the cases Denny's relies on, the defendant put forward evidence contradicting or undermining the plaintiff's evidence supporting a finding of predominance.

In *Wilson v. Wings Over Happy Valley MDF, LLC*, the court reviewed evidence related to whether defendant "maintained an illegal tip pool by requiring delivery drivers to share tips with kitchen workers." 2020 U.S. Dist. LEXIS 30207, at *14 (M.D. Pa. 2020).  Plaintiffs' evidence— which consisted of testimony from the named plaintiffs and some documents—purported to show

"that delivery drivers were *orally informed about this alleged requirement* at the end of their first shift." *Id.* (emphasis added).  Defendant, for its part, put forward evidence of its own tending to show that the tip-pool was voluntary and that "the 'end of night' checklist…was not an official training document, and was not distributed to or followed by all managers." *Id.* at *15–16.

In *Johnston v. HBO Film Management*, which involved claims "based on alleged oral misrepresentations," the defendant put forward evidence from its investment brokers "who sold units of Cinema Plus stating they did not use a standardized script or a uniform presentation in selling shares of Cinema Plus." 265 F.3d 178, 185, 190 (3d Cir. 2001).  Indeed, the named plaintiff's own broker testified that "his 'typical practice [was] to make a list of bullet points describing the pros and cons and to go over those with a person" and that the information he relied on "was derived from marketing materials, scripts and prospectuses" rather than "the alleged uniform sales materials." *Id.* at 190.

In *Reynolds v. Turning Point Holding Co.*—another tip credit notice case—although the court did find that "there are individual questions about whether potential class members received notice," this appears to have been in large part because the plaintiff's onboarding process was atypical.  No. 2:19-cv-01935-JDW, 2020 U.S. Dist. LEXIS 233883, at *22 (E.D. Pa. Dec. 14, 2020).  Indeed, the court noted that:

> Normally, Turning Point used an online portal to onboard new employees.  That portal provided employees notice that Turning Point would take a tip credit as part of the employee's compensation, and it required the employee to acknowledge receipt of that notice.  Ms. Reynolds testified that she did not receive notice of the tip credit through the portal, and Turning Point has not produced evidence that she did.  For purposes of these motions, the Court therefore assumes that Ms. Reynolds did not receive notice through the online portal.  Apparently, that makes her an outlier, *as Turning Point has written confirmation for most tipped employees*.

*Id.* at *5–6 (emphasis added).  In contrast to the defendants in *Wilson*, *Johnston*, and *Turning Point*, Denny's here has put forward no evidence to contradict Ms. Wintjen's claim that new servers were

subject to common tip credit notice practices at onboarding.  Nor has it put forward any evidence that any potential class member received verbal tip credit notice that materially deviated from Denny's' company-wide policy such that complete notice was given.  That is, whereas the plaintiffs' claims in *Johnston* and *Wilson* ultimately depended on proof of verbal communications– *i.e.*, what reliance-inducing representations were made to each investor or what tip-pool information was communicated to each driver, respectively—here there are no such individualized questions because Ms. Wintjen's unrebutted evidence demonstrates that all prospective class members were subject to a common policy.

Finally, the Court notes that, as Ms. Wintjen points out, "the calculation of damages for any individual class member is a simple mathematical equation consisting of multiplying the number of hours worked during the class period by the amount of tip credit claimed by Defendant for those hours" with potentially minor variations between class members due to differences in the number of hours worked.  ECF No. 90 at 17–18.  Thus, no individualized damages issues preclude class certification here.  *See, e.g.*, *Neale v. Volvo Cars of N. Am., LLC,* 794 F.3d 353, 375–75 (3d Cir. 2015) (noting that "'[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.'") (citation omitted).

Accordingly, the Court finds that Ms. Wintjen has satisfied Rule 23(b)(3)'s predominance requirement (and, therefore, Rule 23(a)(2)'s commonality requirement).

### 2.  Superiority

Finally, certification is only warranted if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'"  *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) (quoting *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 316 (3d Cir. 1998)).

Ms. Wintjen argues that "given the common questions of law and fact relating to the same state wage and hour laws, a class action is the superior method of litigating the Tipped Employees' claims." ECF No. 90 at 18.  Furthermore, Ms. Wintjen maintains that superiority is met because (1) "this Court provides a fair and convenient forum for this litigation for Plaintiff, Defendant, and the numerous class members who reside in or around this District" and (2) "due to the fact that 'class members' interest in controlling their own claims is minimal in comparison to the cost of prosecuting those claims in separate lawsuits.'" *Id.* (quoting *Bland v. PNC Bank, NA.*, No. 2:15-CV-01042-AJS, 2016 U.S. Dist. LEXIS 189220, at *61 (W.D. Pa. Dec. 16, 2016)).  Denny's, on the other hand, says that superiority has not been met and Ms. Wintjen's Rule 23 Motion should be denied because "[t]he Court cannot, in fairness, deprive Denny's of the opportunity to demonstrate, for each of its Pennsylvania employees, that the PMWA's notice requirements were satisfied." ECF No. 99 at 20 (citing *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018)).

First, as courts presiding over other wage and hour cases of this type have observed, "there is 'little incentive for Plaintiffs to bring their claims individually because the amount of recovery, if any, would be very small.  Class actions are particularly appropriate in such cases.'" *Koenig v. Granite City Food & Brewery, Ltd.*, No. 16-1396, 2017 U.S. Dist. LEXIS 71809 (W.D. Pa. May 11, 2017) (Kearney, J.) (quoting *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 310 (E.D. Pa. 2012)).  Second, we agree with Ms. Wintjen that this District is a fair and convenient forum for the litigation, given the close connection between the Western District and the underlying claims at issue.  Finally, class certification here will not "deprive Denny's of the opportunity to" prove that notice was properly given.  As noted above with respect to predominance, it is Denny's' burden

29

to prove that compliant notice was provided, and such proof begins with evidence that a given manager or trainer deviated from Denny's' company-wide materials and policies.  That Denny's has not submitted any such evidence to date—indeed, the only evidence from any manager (the Weinel Declaration) demonstrates no such deviation for approximately 40 potential class members)—appears  to be the result of Denny's' strategy of pointing to a purported lack of evidence in seeking to defeat first Ms. Wintjen's summary judgment motion and now her Rule 23 Motion, rather than presenting conflicting evidence of its own.  Regardless, following class certification, the course set two years ago for this case is to proceed into a second phase of discovery "on all topics related to damages and the decertification of opt-in class members."  ECF No. 39 at 1.  Ms. Wintjen has met her burden to demonstrate, by a preponderance of the evidence, that the Rule 23 requirements, including superiority, have been met;  Denny's has not, to date, produced any evidence that would undercut that conclusion.  As such, the Court finds that superiority has been met here.

Having found that requirements of Rule 23(a) and Rule 23(b)(3) are met here, the Court will certify a class as proposed in Ms. Wintjen's Rule 23 Motion.

## IV.    Motion for Conditional Certification of a Collective under the FLSA

We now turn to the FLSA Collective component of Ms. Wintjen's case.  Ms. Wintjen seeks conditional certification of her FLSA claims as a collective action under 29 U.S.C. § 216(b).  In her FLSA Motion, she proposes that, for purposes of her FLSA claims in Count I of the Complaint, a collective should be defined as follows:

> All Tipped Employees who worked for Defendant in the Commonwealth of Pennsylvania at any point between July 6, 2017 and August 1, 2019, who (i) were hired prior to January 1, 2019 and (ii) elect to opt-into this Action. (the "Collective Class")

ECF No. 91 at 1.  With respect to the proposed FLSA Collective, Ms. Wintjen also requests that the Court (1) equitably toll the claims of any opt-in plaintiffs for a period of approximately one year and (2) authorize notice to be sent to potential opt-in plaintiffs by text message.  ECF No. 92 at 17–20.  Denny's maintains that Ms. Wintjen has not met her burden to demonstrate that conditional certification is warranted here.  Broadly speaking Denny's argues that Ms. Wintjen has failed to present evidence showing that similarly situated employees—that is, Denny's' servers who received (1) deficient tip credit notice and (2) performed excessive amounts of side work— even exist.  ECF No. 100 at 7–13.  Furthermore, in the event the Court does conditionally certify an FLSA Collective, Denny's asks that the Court (1) decline to order production of potential opt-in plaintiffs' social security numbers;  (2) decline to authorize notice via text message;  and (3) decline to equitably toll the claims of potential opt-in plaintiffs.  *Id.* at 14–20.

## A.    Legal Standards

### 1.    Conditional Certification

Under the FLSA, an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b). Although conceptually similar to a class action—in that it provides a mechanism for litigants to gather a number of individual claims into a single action—a collective action under Section 216(b) differs from a Rule 23 class action in a number of important ways.  *See Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 223 (3d Cir. 2016) (noting that although courts have borrowed "procedures, concepts, and nomenclature from the Rule 23 class action context…there remain important differences between a Rule 23 class action and a collective action").  Thus, because no "procedural rules [have] been promulgated to guide courts and parties in processing collective actions," *id.*, many courts (including our Court of Appeals) have adopted a two-step procedure for determining whether an FLSA lawsuit may proceed as a collective action.

At step one—which is the current posture of this case—a named plaintiff moves for what is known as "conditional certification." "The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members." *Id.* at 224 (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). This is, therefore, "not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process." *Id.* (citing *Zavala v. Wal-Mart Stores Inc.,* 691 F.3d 527, 536 (3d Cir. 2012)). The bar for obtaining conditional certification is not a high one; rather, plaintiff must "make a 'modest factual showing' — something beyond mere speculation — to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id.* (quoting *Zavala*, 691 F.3d at 536 n. 4). At the conditional certification stage, the district court must determine "'whether "similarly situated" plaintiffs do in fact exist,'" and then the ultimate determination as to whether such opt-in plaintiffs are, in fact, "similarly situated" is reserved for the final certification/decertification stage. *Zavala*, 691 F.3d at 536 n.4 (quoting *Myers v. Hertz Corp*., 624 F.3d 537, 555 (2d Cir. 2010)).

### 2.    Statute of Limitations and Equitable Tolling

Under the FLSA, "[t]he applicable statute of limitations is three years for a willful violation, two years otherwise." *Viscomi v. Clubhouse Diner*, No. 13-4720, 2016 U.S. Dist. LEXIS 43375, at *16 (E.D. Pa. Mar. 30, 2016) (citing 29 U.S.C. 255(a)). However, the filing of the named plaintiff's complaint and consent-to-sue does not toll the statute of limitations for any opt-in plaintiffs; rather, the statute of limitations for an opt-in plaintiff continues to run until his or her individual opt-in notice is filed. *See* 29 U.S.C. § 256(b); *Viscomi*, 2016 U.S. Dist. LEXIS 43375, at *17 ("The statute of limitations continues to run for potential members until they affirmatively opt in.") (citing *Symczyk v. Genesis Healthcare Corp*, 656 F.3d 189, 200 (3d Cir. 2011), *rev'd on*

*other grounds Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66 (2013)).  A "violation of the FLSA [is] willful if, at minimum, the employer 'showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]'"  *Stone v. Troy Constr., LLC*, 935 F.3d 141 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–33 (1988)).

Finally, equitable tolling of the applicable limitations period "may be appropriate" in three circumstances: "'(1) if the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.'"  *Hunt v. McKesson Corp.*, No. 2:16-cv-1834, 2018 U.S. Dist. LEXIS 145733, at *26 (W.D. Pa. Aug. 28, 2018) (Hornak, then-J.) (quoting *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 845 (3d Cir. 1992)).

### B.  Discussion

Based on the record now before the Court, Ms. Wintjen has made the "modest factual showing" necessary to warrant conditional certification of this case as a collective action under Section 216(b).  Specifically, the Court notes that Denny's used company-wide onboarding materials and that Mr. Hart, Denny's 30(b)(6) designee, conceded that Denny's expected each new hire to receive the same information (including tip credit notice) during onboarding and training.  And, Ms. Weinel's declaration confirms that Ms. Wintjen's onboarding included no more and no less information than what was contained in Denny's company-wide materials at the time.  Finally, Mr. Hart testified that Denny's policies with regard to side work and time keeping were uniform across its restaurants.  The Court thus concludes that Ms. Wintjen has presented evidence sufficient to demonstrate a "factual nexus" between herself and members of the proposed collective with respect to the FLSA tip credit notice and dual jobs claims.

Denny's arguments to the contrary are not persuasive.  First, Denny's reliance on *Reynolds v. Turning Point Holding Co.* is misplaced.  *See* No. 2:19-cv-01935-JDW, 2020 U.S. Dist. LEXIS

233883 (E.D. Pa. Dec. 14, 2020).  As described in more detail above, the named plaintiff in *Reynolds* experienced an atypical onboarding process.  *See id.* at *5–6.  Here, taking Denny's' written materials, Mr. Hart's testimony, and Ms. Weinel's declaration together, it appears that Ms. Wintjen's onboarding experience was entirely consistent with both Denny's' expectations and written policies.  Next, Denny's' argument that "[a]t a minimum, Plaintiff needed to demonstrate that there are other Denny's employees who were trained by Madeleine Weinel, and that were employed within the proposed class period," ECF No. 100 at 8, elides the fact that Ms. Weinel's declaration states that she personally onboarded some 40 new servers during roughly the proposed collective period following precisely the "practice" she used when onboarding Ms. Wintjen.  *See* ECF No. 59-4 ¶¶ 2–4 (noting that she worked in a "manager" role from July 2016 onwards and that "I was involved in the orientation, onboarding, and training of approximately 40 servers.").  At a minimum, this evidence shows the existence of other employees who were subject to the same policies and practices as Ms. Wintjen during the proposed FLSA Collective period.[10]

A similar chain of reasoning applies with equal force to the side work claim.  Denny's' written employee policies and procedures make clear that all Denny's servers are expected to perform side-work.  Mr. Hart's testimony corroborated this fact, and further showed that Denny's did not keep track of all the time servers spent performing tipped versus untipped duties.  There is no question that other servers working for Denny's in Pennsylvania during the class period were subject to these same company-wide policies and procedures.  While Denny's correctly notes that its failure to keep "adequate records of time Plaintiff spent performing side work does not support

---

[10] Denny's notes that it "has no duty to prove what notice it provided to hypothetical plaintiffs for purposes of the instant motion."  ECF No. 100 at 10.  This is, at the conditional certification stage, no doubt true.  However, it is also the case that Ms. Wintjen has no duty to disprove Denny's' defense at this juncture.  Indeed, in the face of evidence presented by Ms. Wintjen sufficient to meet her burden for conditional certification, Denny's cannot rest on the mere supposition that other, as-yet-unidentified evidence will suffice to defeat the minimal showing necessary here, or that absence of evidence affirmatively contravening Denny's' affirmative defense gives rise to any inference in Denny's' favor.

a private cause of action," that finding is relevant only to evidence Denny's may rely on in disputing damages, and is not germane to whether employees who were subject to Denny's' company-wide policies exist for purposes of conditional certification.[11]  The Court thus concludes that Ms. Wintjen has made the "modest factual showing" necessary to show the existence of other employees similarly affected by Denny's policies and practices.

### C.      Statute of Limitations and Equitable Tolling

The Court finds that the record supports application of a three-year statute of limitations. *See Viscomi,* 2016 U.S. Dist. LEXIS 43375, at 16 n.2.  For example, 29 C.F.R. § 531.59—which sets forth in plain language the precise elements of the required tip credit notice—went into effect in 2011.  The version of DOL Fact Sheet # 15 in the record here, which also sets forth the precise notice elements, shows that it was last revised in December 2016.  And, by at least sometime in 2018, Denny's had made Fact Sheet # 15 "available" to its managers.  However, there is nothing in the record to suggest that at any point, either before or during the proposed collective period, Denny's—a sophisticated company operating a nationwide change of restaurants—revised or updated its company-wide documents (including, for example, the Employee Guidebook) to reflect DOL's express statements on what the FLSA requires for tip credit notice to be complete.  Whether or not Ms. Wintjen and the collective can ultimately prove willful violations remains to be seen; however, the fact that Denny's failed for more than half a decade to update its company-wide documents suggests a degree of recklessness that could support application of the three-year statute of limitations for collective certification and notice purposes.

---

[11] Perplexingly, Denny's also suggests that Ms. Wintjen "has already failed to demonstrate conclusively for purposes of her summary judgment motion that a violation entitling her to recover damages occurred."  ECF No. 100 at 12.  But Ms. Wintjen did not move for summary judgment on her dual-jobs claim—instead, she sought judgment on the narrow issue of whether Denny's complied with its record keeping obligations under 29 U.S.C. § 211(c) and 29 C.F.R. § 516.28(a).  *See* ECF No. 55 at 17–18.  Indeed, it was *Denny's* who moved for summary judgment on Ms. Wintjen's dual jobs claim—a motion this Court denied.  *See* ECF No. 58 at 20–23;  ECF No. 72 at 19-20 and ECF No. 73.

Furthermore, we conclude that equitable tolling is appropriate here.  As Ms. Wintjen notes, the Second Case Management Order, ECF No. 49, expressly directed that the parties file and brief motions for summary judgment *before* Ms. Wintjen would be permitted to proceed with her motion for collective certification.  After those motions for summary judgment were fully briefed, the case was transferred to the undersigned.  As such, Ms. Wintjen's Motion for Conditional Certification was delayed by approximately one year due to the Court's decisions regarding management of this litigation, not Ms. Wintjen's inaction.  Accordingly, Ms. Wintjen's request for equitable tolling will be granted, and the statute of limitations for opt-in plaintiffs will be tolled from March 9, 2020 (the date of the Second Case Management Order) to March 16, 2021 (the date of the Third Case Management Order).  *See* ECF No. 92 at 20 (seeking equitable tolling for a period of 1-year, inclusive of the parties' earlier 60-day tolling agreement).

### D.    Notice to Potential Opt-In Plaintiffs

Finally, Ms. Wintjen requests that the Court (1) allow the parties 10 days to meet and confer regarding the form of notice to be sent to opt-in plaintiffs;  (2) order Denny's to produce, within 10 days of the Court approving the form of notice "[a] list, in electronic and importable format, of all members of the putative collective class, including their name, job title, address, email address, mobile telephone number, dates of employment, date of birth, and last four digits of their Social Security number";  and (3) authorize that notice be sent to potential opt-in class members via first-class mail, e-mail, and text message.  ECF No. 92 at 17–19.  Denny's opposes Ms. Wintjen's requests for (1) the last four digits of potential opt-in plaintiffs' social security numbers and (2) authorization to disseminate notice via text message.  *See* ECF No. 100 at 14.

As the court observed in a recent decision from the Eastern District of Pennsylvania, "[p]roviding servers with electronic notice is especially important given the high turnover rate of employees in the restaurant industry."  *Belt v. P.F. Chang's China Bistro, Inc.*, No. 18-3831, 2020

U.S. Dist. LEXIS 119283, at *26 (E.D. Pa. July 8, 2020).  Accordingly, the court concluded that "[d]espite [defendant's] concerns about redundancy, it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers."  *Id.* at *25 (collecting cases).  This Court agrees and will also provide a 10 day period in which the parties are to confer regarding the proposed form of notice.  The Court will not, however, order Denny's to produce the last four digits of potential opt-in plaintiffs' social security numbers.  Ms. Wintjen's request already seeks a number of pieces of personal identifying information for each potential opt-in, which should be sufficient for her counsel to appropriately direct notice.

## V.      Conclusion

For the reasons set forth above, and as set forth more fully in the accompanying Order, Ms. Wintjen's Motion for Class Certification, ECF No. 89, and her Motion for Conditional Certification, ECF No. 91, will be GRANTED.

DATED this 18th day of November, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record