IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULI WINTJEN, *on behalf of herself and others similarly situated*, | |
| Plaintiff, | 2:19-CV-00069-CCW |
| v. | |
| DENNY'S, INC., | |
| Defendant. | |

**OPINION**

Before the Court is Plaintiff Juli Wintjen's Motion for Attorneys' Fees, Costs and Expenses, ECF No. 332. For the reasons set forth below, the Motion will be GRANTED IN PART.

I.    **Background**

On January 22, 2019, on behalf of herself and other similarly situated employees, Ms. Wintjen initiated this hybrid collective and class action, asserting claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. (the "FLSA"), and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, et seq. (the "PMWA"). ECF No. 1. Ms. Wintjen alleged that Denny's violated wage-and-hour laws when it categorized its servers as tipped employees despite failing to provide adequate tip-credit notice (the "Notice Claims"), and when it failed to pay its servers minimum wage for hours spent performing non-tip generating work and/or excessive sidework (the "80/20 Claims"). *Id.*

The Court will only recount the procedural history that is relevant to the instant Motion. The Court previously approved a settlement agreement that resolved the 80/20 Claims (the "2023 Partial FLSA Settlement"). ECF No. 234. Thus, the Notice Claims are the only claims remaining in this case. With respect to those claims, the Court has finally certified an FLSA collective action

and certified a PMWA class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). *See* ECF Nos. 106, 245.  On February 22, 2024, after the parties cross-moved for summary judgment, the Court denied summary judgment as to Denny's and granted, in part, summary judgment to Ms. Wintjen, the FLSA Collective, and members of the PMWA Rule 23 Class.  ECF No. 271.  The Court held that the FLSA Collective and PMWA Rule 23 Class members were entitled to summary judgment as to liability;  however, a subset of the PMWA Rule 23 Class (the "ETCN Rule 23 Subclass")[1] was not entitled to summary judgment because a genuine issue of material fact existed as to whether they received notice of the tip credit.  *Id.*  On August 6, 2024, the Court issued an Order (1) severing Ms. Wintjen's FLSA claims from the FLSA Collective, (2) substituting opt-in Plaintiff Sarah Gower as FLSA Collective representative, and (3) certifying the ETCN Rule 23 Subclass pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  ECF No. 330.  That same day, the Court preliminarily approved a settlement agreement that would resolve the FLSA Collective's and ETCN Rule 23 Subclass's claims (the "2024 Settlement").  ECF No. 331.  The Court finally approved the 2024 Settlement on March 4, 2025. ECF No. 361.

On August 13, 2024, Ms. Wintjen filed the instant Motion for Attorneys' Fees, Costs and Expenses.  ECF No. 332.  The parties subsequently stipulated that any award of attorneys' fees pursuant to the Motion must be made (1) pursuant to the FLSA and/or PMWA, not pursuant to the 2024 Settlement itself, and (2) to Ms. Wintjen (not Ms. Gower), "pursuant to a final judgment entered in her favor on her FLSA and PMWA claims."  *See* ECF No. 338-1.  Thus, Ms. Wintjen moves for attorneys' fees and costs as a prevailing party under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., and/or the Pennsylvania Minimum Wage Act (PMWA), 42 P.S.

---

[1] These individuals were listed on a document referred to as the "ETCN List."

§ 333.101, *et seq*., on the assumption that the Court will enter final judgment in Ms. Wintjen's favor on her FLSA and PMWA claims.[2]  ECF No. 333 at 2–3.

Denny's responded to the Motion, ECF No. 338, and Ms. Wintjen filed a Reply, ECF No. 340.  The Court then directed the parties to provide additional information necessary to adjudicate the motion, ECF Nos. 345, 346, 347, 348, and the parties further sought leave to file additional briefing, which the Court permitted, ECF Nos. 349, 351, 357.  The Motion is now fully briefed and ripe for adjudication.

## II.    Legal Standard

Under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  Similarly, under the PMWA, a prevailing plaintiff is entitled to recover "costs and such reasonable attorney's fees as may be allowed by the court."  43 P.S. § 333.113.  The issuance of an award under both the FLSA and the PMWA is within the discretion of the district court.  *White v. Beaver Cnty.*, Civ. A. No. 2:17-cv-998, 2020 WL 3866896, at *2 (W.D. Pa. July 9, 2020) (Hornak, C.J.);  *Grajales v. Safe Haven Quality Care, LLC*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 128, at *2 (Comm. Pleas Aug. 30, 2013).  Where, as here, a prevailing party seeks a fee award under a fee-shifting statute, the calculation of the appropriate fee is determined using the lodestar method.[3]  *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 399 (3d Cir. 2018).  Under that method, first, the district court must calculate the fee applicant's lodestar—"the number

---

[2] While the instant Motion seeks an award of costs and expenses, the Court has already awarded such costs and expenses in connection with granting final approval of the 2024 Settlement.  *See* ECF Nos. 361 ¶ 12 (awarding $26,000 in costs); 333 at 12 ("The [2024 Settlement] provides that Defendant agrees to pay up to $26,000 in costs if approved by the Court.").  Accordingly, the Court treats the instant Motion as one for attorneys' fees only.

[3] The parties agree that the lodestar method applies here.  *See* ECF No. 333 at 9–10 ("The lodestar method is used as the starting point to calculate an award of reasonable attorneys' fees.");  ECF No. 338 ("[T]he amount of fees under the FLSA is determined using the 'lodestar-then-Johnson factors' method.").

of hours worked multiplied by the prevailing hourly rate"—before applying the twelve factors in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[4]    *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122, 128 (3d Cir. 2017);  *White*, 2020 WL 3866896, at *2.

To determine an attorney's reasonable hourly rate, a court must assess "the experience and skill of the . . . attorney[] and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *White*, 2020 WL 3866896, at *3 (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).  The relevant "community" for purposes of determining a reasonable hourly rate is the forum of the litigation, unless (1) "the need for the special expertise of counsel from a distant district is shown," or (2) "local counsel are unwilling to handle the case."  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005) (cleaned up).  In determining a reasonable rate, a district court "may not set attorney's fees based on a generalized sense of what is usual and proper but must rely upon the record."  *White*, 2020 WL 3866896, at *3 (citing *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 361 (3d Cir. 2001)).  Accordingly, the plaintiff bears the burden of "producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case."  *Id.*  "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience."  *Stadler v. Abrams*, No. CV 13-2741, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018), *aff'd*, 785 F. App'x 66 (3d Cir. 2019);  *see also Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 595 (3d Cir. 2000) ("An attorney's showing of reasonableness must rest on evidence other than

---

[4] Attorney fee awards under the PMWA are similarly determined by weighing the lodestar in light of five factors enumerated in Rule 1717 of the Pennsylvania Rules of Civil Procedure, which overlap with the factors set forth in *Johnson*.  *See Grajales*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 128, at *3–4.

the attorney's own affidavits.").  The party opposing the fee request "has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  Once an adverse party raises an objection, the court "has a great deal of discretion to adjust the fee award in light of those objections."  *Id.*

## III.    Analysis

Ms. Wintjen seeks an award of attorneys' fees for work performed by two law firms: Connolly Wells & Gray, LLP and Lynch Carpenter, LLP (collectively, "Class Counsel"). Connolly Wells & Gray's reported lodestar is $818,402.00.  Wells Decl., ECF No. 334 ¶ 26.  And Lynch Carpenter's lodestar is $383,552.50.  Lynch Decl., ECF No. 335 ¶ 20.  While Class Counsel's combined lodestar is $1,201,954.50, the parties agree that for purposes of resolving the instant Motion this amount should be decreased by $95,000 to account for the attorneys' fees already paid to Class Counsel in connection with the 2023 Partial FLSA Settlement.[5]  ECF No. 333 at 12 n.11.  Thus, in the instant Motion Ms. Wintjen requests an award of $1,106,954.50 in attorneys' fees.  ECF No. 332.  As discussed in more detail below, Denny's argues that the Court should reduce this amount for several reasons.  ECF Nos. 338, 357.

### A.    Lynch Carpenter's Requested Hourly Rates Are Not Reasonable

Denny's objects to the reasonableness of the hourly rates submitted by Class Counsel.  ECF No. 338 at 7–14;  ECF No. 357.  Connolly Wells & Gray requests an hourly rate of $650 for each

---

[5] The parties have not explained how the $95,000 reduction to Class Counsel's combined lodestar is allocated (*e.g.*, whether it is divided evenly between Lynch Carpenter's and Connolly Wells & Gray's individual lodestars).

of its three attorneys who worked on this case.  ECF No. 334 ¶ 26.  Lynch Carpenter's requested rates are as follows:[6]

| **Professional** | **Title** | **Requested Hourly Rate** |
| --- | --- | --- |
| Gary Lynch | Managing Partner | $1,100 |
| Kelly Iverson | Partner | $950 |
| Jamisen Etzel | Partner | $900 |
| Elizabeth Pollock-Avery | Partner | $900 |
| Katie Horrigan | Of Counsel | $900 |
| James McGraw | Associate | $800 |
| Matthew Brady | Associate | $550 |
| Ken Held | Associate | $450 |
| James LaMarca (2021–24) | Associate | $450 |
| Lucia Romani | Associate | $450 |
| James LaMarca (2020) | Law Clerk | $275 |
| Sadie Fahsbender | Law Clerk | $275 |
| Daniel Hart | Paralegal | $275 |

ECF No. 335 ¶ 20.

Ms. Wintjen argues that Class Counsel's rates are reasonable.  ECF No. 333 at 13–14;  ECF No. 346.  To support that conclusion, Ms. Wintjen relies on declarations from Class Counsel that cite to cases both within this District and elsewhere where Class Counsel's rates were approved.  *See* ECF Nos. 334 ¶ 40;  335 ¶ 24.  Ms. Wintjen has also submitted five declarations from attorneys

---

[6] Ms. Wintjen withdrew her fee request for work performed by Law Clerk Patrick Donathen, and therefore his rate is not included here.  *See* ECF No. 340-2.

in Pittsburgh attesting to the reasonableness of Lynch Carpenter's requested rates.[7] *See* ECF Nos. 346-1–346-5. Denny's argues none of the evidence submitted by Ms. Wintjen establishes that Class Counsel's requested rates are reasonable for the Pittsburgh market and submits its own evidence of what constitutes a reasonable rate. ECF No. 338 at 7–11; ECF No. 357. As set forth more fully below, the Court finds that Ms. Wintjen has not established that Lynch Carpenter's requested rates are reasonable market rates and will therefore reduce those rates based on the evidence presented. The Court will, however, approve Connolly Wells & Gray's requested rates as reasonable market rates.

### 1. Class Counsel's Unopposed Fee Awards in Class Action Settlements Are Not Highly Probative of a Reasonable Market Rate in Pittsburgh

Ms. Wintjen argues that the fees awarded to Class Counsel in connection with class action settlements constitute good evidence of a reasonable market rate because "[t]he best evidence of a prevailing market rate is counsel's customary billing rate." ECF No. 333 at 13 (quoting *New Berry, Inc. v. Smith*, No. CV 18-1024, 2021 WL 5332165, at *2 (W.D. Pa. Nov. 15, 2021) (Dodge, M.J.)); *see also* ECF No. 340 at 3 (stating that Class Counsel's fee awards in class settlements "are the *strongest* evidence that their rates are reasonable, because they are the rates Class Counsel has been commanding in their market."). Denny's responds that Class Counsel's rates exceed the rates published in the Community Legal Services, Inc. ("CLS") fee schedule for Philadelphia (as opposed to Pittsburgh) by a large margin,[8] and that just because the parties agreed to an hourly rate in connection with a class action settlement does not make it the customary hourly rate in the

---

[7] These declarations do not opine on the reasonableness of Connolly Wells & Gray's requested rates.

[8] *See* Attorney Fees, Community Legal Services of Philadelphia, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Feb. 3, 2025). The CLS fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado*, 256 F.3d at 187.

community.  ECF No. 338 at 2, 7–9 (citing *Mozingo v. Oil States Energy Servs., L.L.C.*, No. CV 15-529, 2018 WL 4473345 (W.D. Pa. Sept. 18, 2018)).  In reply, Ms. Wintjen argues that rates approved in connection with class action settlements are valuable evidence of a reasonable market rate because "[t]he baseline standard for awarding fees is no different in fee-shifting or percentage-of-recovery class cases," and where fee applications are unopposed courts have a heightened duty to scrutinize the reasonableness of fee awards.  *See* ECF No. 340 at 1–3.

On balance, the Court finds that the cases cited by Ms. Wintjen where Class Counsel's rates were approved in connection with unopposed fee applications are not highly probative of the reasonable market rate for legal services in Pittsburgh.[9]  The court reaches this conclusion for several reasons.  First, many of the cases cited by Ms. Wintjen where Class Counsel's rates were approved were not litigated in this District.  *See, e.g.*, ECF No. 335 ¶ 24 (citing fee awards from the District Massachusetts and the Southern District of New York, among others).  They therefore have no bearing on what the reasonable market rate for legal services is in Pittsburgh.  *See Mozingo*, 2018 WL 4473345, at *5 ("We cannot simply accept Washington billing rates as being reasonable in Pittsburgh.").

Relatedly, the fact that Class Counsel appears to submit the same rates in cases outside this District as they do for cases within this District cuts against their rates being representative of what is reasonable for the Pittsburgh legal market.  *See* ECF No. 335 ¶ 24 (noting that Lynch Carpenter's

---

[9] Ms. Wintjen argues that "the 'relevant community' the Court should refer to for comparator attorneys' [and Class Counsel's] hourly rates should not be exclusively interpreted as a geographical location such as Pittsburgh," and instead the Court ought to refer to the national market for complex class action litigation as the relevant community. ECF No. 346 at 3.  But Ms. Wintjen offers no authority supporting this proposition, and it cuts against well-settled law in the Third Circuit that the relevant community is the forum of the litigation unless one of two exceptions applies—"when the need for the special expertise of counsel from a distant district' is shown or when local counsel are unwilling to handle the case."  *See Interfaith Cmty.*, 426 F.3d at 705.  Ms. Wintjen has not sought to establish that either exception applies here, nor could she since she is represented by Pittsburgh-based attorneys at Lynch Carpenter. The Court therefore finds that the relevant legal community for purposes of determining a reasonable market rate is Pittsburgh.

"rate structure has been approved in numerous recent class/collective actions," and citing cases both within and without this District). Rather, this indicates to the Court that Class Counsel's requested rates are uniform, national rates that are not tied to the economics of the Pittsburgh legal market.[10] *See U.S. ex rel. Simring v. Univ. Physician Assocs.*, No. CIV.A. 04-3530 PGS, 2012 WL 10033888, at *5 (D.N.J. Oct. 2, 2012), *report and recommendation adopted as modified*, No. CIV.A. 04-3 530 PGS, 2013 WL 6628223 (D.N.J. Aug. 22, 2013), *on reconsideration in part*, No. 04-CV-3530 PGS, 2013 WL 6623742 (D.N.J. Dec. 16, 2013), *aff'd in part, vacated in part, remanded sub nom. Simring v. Rutgers*, 634 F. App'x 853 (3d Cir. 2015) (declining to accept "one standard billing rate irrespective of the market" as a reasonable rate in the New Jersey legal market).

More broadly, Ms. Wintjen's argument that prior court approval of Class Counsel's fees in the class settlement context is evidence of their reasonableness here fails to account for a key distinction between fees awarded in that context and fees awarded following a contested application under a fee-shifting statute. True, courts considering fee applications in connection with class action settlements must ensure that the fee award is reasonable. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). But the framework for determining the reasonableness of a fee award typically differs in the class settlement context, where the "percentage-of-recovery method" of calculating the award, rather than the lodestar method, "is generally favored." *Id.* Under the percentage-of-recovery method, courts are guided by the familiar *Gunter/Prudential* factors, none of which require the court to specifically determine whether the requested fee aligns with the reasonable market rate for comparable legal services in

---

[10] Indeed, Lynch Carpenter admits as much. *See* ECF No. 340-1 ¶¶ 9–10.

the forum of the litigation.[11]  *See id.* at 301.  And while courts awarding fees under the percentage-of-recovery method still conduct a lodestar "cross-check" to confirm the reasonableness of the fee award, that cross-check is "abridged" and entails "neither mathematical precision nor bean-counting."  *Id.* at 306, n.16 ("[T]he lodestar cross-check is 'not a full-blown lodestar inquiry.'").[12] Thus, the percentage-of-recovery method does not squarely put courts to the specific task of determining whether the fee applicant's requested rates are representative of a reasonable hourly rate for legal services *in the forum of the litigation*, which is a core inquiry for courts applying the lodestar method in a contested fee application.  *See Mozingo*, 2018 WL 4473345, at *4 ("Courts using the parties' proposed rates as a lodestar comparison in contingency cases is not the same as evaluating the reasonable hourly rates in a contested application for fees.").  The Court therefore cannot "give complete deference to hourly rates approved" in connection with uncontested class action settlements as evidence of a reasonable market rate for legal services in Pittsburgh.  *See id.* ("Just because the parties agree to an hourly rate does not make it the customary hourly rate in this community.").

### 2.    The Comparator Evidence Submitted by Ms. Wintjen and Denny's Does Not Establish that Lynch Carpenter's Requested Rates are Reasonable

Ms. Wintjen has submitted declarations from five Pittsburgh-based attorneys attesting to the reasonableness of Lynch Carpenter's requested rates and reporting their own rates for similar services.  *See* ECF Nos. 346-1–346-5.  Denny's argues that these declarations do not support the

---

[11] The seven factors are "(1) the size of the fund created and the number of persons benefitted;  (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved;  (4) the complexity and duration of the litigation;  (5) the risk of nonpayment;  (6) the amount of time devoted to the case by plaintiffs' counsel;  and (7) the awards in similar cases." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

[12] Moreover, a lodestar cross-check is just that—a secondary check—and "does not trump the primary reliance on the percentage of common fund method."  *Id.* at 307.

reasonableness of Lynch Carpenter's rates for several reasons. First, Denny's argues that three of Ms. Wintjen's proffered comparators—attorneys D. Aaron Rihn, Matthew T. Logue, and Kevin W. Tucker—attested that Lynch Carpenter does not charge its clients hourly rates, and therefore Lynch Carpenter's rates cannot constitute "market rates." ECF No. 357 at 3. Denny's also argues that the same is true of comparator attorneys Rihn, Logue, and Tucker themselves, and therefore "the hourly rates these attorneys claim . . . are not market rates." *Id.* The Court agrees that the declarations' "failure to address [the fact that the vast majority of Lynch Carpenter's and the declarants' clients never have to pay their reported rates] detracts from their effectiveness."[13] *In re Johnson & Johnson Derivative Litig.*, No. 10–2033(FLW), 2013 WL 11228425, at *55 (D.N.J. June 13, 2013), *adopted*, No. CIV.A. 10-2033 FLW, 2013 WL 6163858 (D.N.J. Nov. 25, 2013).

But even assuming Lynch Carpenter and comparator attorneys Rihn, Logue, and Tucker charge clients their asserted rates at times, the evidence suggests that Lynch Carpenter attorneys' rates would be excessive. While the attorney declarations offered by Ms. Wintjen all conclude that Lynch Carpenter's rates are reasonable, that conclusion is undermined when one compares those attorneys' rates to Lynch Carpenter's. For example, comparator attorney Rihn has twenty-four years of experience in complex class action litigation and claims an hourly rate of $900. Rihn Decl., ECF No. 346-2 ¶¶ 2, 5, 11. That is the same hourly rate that Ms. Wintjen submits as reasonable for Lynch Carpenter attorneys Jamisen Etzel and Elizabeth Pollock-Avery, who have

---

[13] As Lynch Carpenter attorney Jamisen A. Etzel explains, "95%, if not 100%" of the total work performed by Lynch Carpenter's attorneys in all of its representations during the pendency of this case has been on a contingency or pro bono basis. ECF No. 340-1 ¶ 4. To extent that Lynch Carpenter's requested rates—as well as the rates of the comparator attorneys offered by Ms. Wintjen—are purely contingent rates, they therefore "provide no useful paradigm" because these attorneys' clients' "would have agreed to pay any rate; there were no circumstances in which they would have been 'out of pocket.'" *In re Johnson & Johnson Derivative Litig.*, 2013 WL 11228425, at *58. In other words, "contingent rates in this context, where it is anticipated that at the end of the case the defendant will be required to pay the fees of plaintiff's counsel, offer no gauge of a reasonable fee." *Id.*; *see also Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 537 (3d Cir. 1997) ("[W]hile a reasonable fee is to be calculated according to the prevailing market rates, there is no such thing as a prevailing market rate in contingent litigation.") (cleaned up).

only fourteen and thirteen years of experience, respectively.  *See* Lynch Decl., ECF No. 335 ¶ 20; Ex. B, ECF No. 335-2 at 13.  The other comparators offered by Ms. Wintjen similarly claim hourly rates that do not align with those requested by Lynch Carpenter when considering each attorneys' relative years of experience.  *See* Logue Decl., ECF No. 346-4 ¶¶ 2, 4, 6, 12 (claiming an hourly rate of $900 for comparator attorney Logue, who has twenty-four years of experience);  Kravec Decl., ECF No. 346-3 ¶¶ 3–5, 9 (claiming an hourly rate of $975 for comparator attorney Kravec, who has thirty-two years of experience);  Tucker Decl., ECF No. 346-5 ¶¶ 2, 4, 16 (claiming an hourly rate of $650 for comparator attorney Tucker, who has fourteen years of experience, nine of which involved class action litigation).[14]  No comparator claims an hourly rate that is on par with attorney Gary Lynch's requested rate of $1,100.  *Compare* Lynch Decl, ECF No. 335 ¶ 20, *with* ECF Nos. 346-1–346-5.  In sum, the comparator declarations submitted by Ms. Wintjen tend to undermine the reasonableness of Lynch Carpenter's rates.  Additionally, the Court notes that the attorneys at Connolly Wells & Gray—Lynch Carpenter's co-counsel who performed the lion's share of the work in this case—each request approval of fees at an hourly rate of $650, despite each claiming at least nineteen years of experience in class action litigation.[15]  *See* Wells Decl., ECF No. 334 ¶¶ 26–27.

Denny's also argues that the 2023 National Association of Legal Fee Analysis report ("NALFA Report") attached as an exhibit to comparator attorney James Pietz's declaration demonstrates that Lynch Carpenter's rates are excessive.  ECF No. 357 at 3–5.  The NALFA

---

[14] Additionally, as Denny's points out, comparator attorney Pietz's hourly rate of $525 in 2014—when he had 24 years of experience in complex class action litigation—is $698 today when adjusted for inflation.  *See* ECF No. 357 at 3–4.

[15] While Connolly Wells & Gray is based in Philadelphia and therefore its rates are not necessarily representative of reasonable market rates in Pittsburgh, "rates in the Philadelphia legal market are, if anything, likely to be higher than those in the Pittsburgh market."  *Turkovich v. Sally Beauty Supply LLC*, No. 2:20-CV-00694-NR, 2021 WL 767629, at *1 (W.D. Pa. Feb. 26, 2021) (Ranjan, J.).

Report is a survey of the prevailing market rates for civil litigators in the United States. Pietz Decl. Ex. C, ECF No. 346-1 at 43. Of particular note, the NALFA Report contains a breakdown of the rates charged for regular and complex litigation in the Pittsburgh legal market based on survey responses from 926 Pittsburgh litigators. *Id.* at 115, 123. The rates are classified into "Tiers," with Tier 1 being the lowest and Tier 4 being the highest. *Id.* As Mr. Pietz explains it, "attorneys with many years of experience in complex cases are recognized to be at a higher 'Tier.'" Pietz Decl., ECF No. 346-1 ¶ 25 (citing page 19 of the NALFA Report). Thus, Mr. Pietz concludes that because Lynch Carpenter is a "preeminen[t] . . . top complex class action law firm locally and nationally," Lynch Carpenter's attorneys "can be classified at Tier 3 or 4 with a 'Complex Rate' given the work they are routinely engaged in," and therefore the NALFA Report "fully supports that these attorneys' rates are reasonable and in accordance with the marketplace." *Id.* ¶ 26.

But Mr. Pietz's interpretation of the Tier system appears to be incorrect. The portion of the NALFA Report that Mr. Pietz cites indicates that the Tier system just reflects where an attorney's reported rates fall on the distribution curve of the survey participants' responses, not whether a particular attorney's skill and experience warrants placing them in a higher Tier so as to justify higher rates. *See* Pietz Decl. Ex. C, ECF No. 346-1 at 61 (stating that premium rates are "[r]ates paid at the high end of the distribution curve (Tier 4)," while discount rates are "[r]ates charged below market value at the low end of the distribution curve (Tier 1)"). Viewed in this light, the NALFA Report just shows how Lynch Carpenter's requested rates stack up against the rates reported by other Pittsburgh attorneys engaged in complex civil litigation, without regard to whether those rates are warranted based on the skill, experience, and reputation of a particular

attorney.  That is still useful information, but it does not necessarily justify Lynch Carpenter's rates.[16]

Finally, Denny's has submitted a rebuttal declaration from attorney Marcia L. Telek DePaula.  DePaula Decl., ECF No. 357-1.  Ms. DePaula is a Pittsburgh-based partner at Steptoe & Johnson, PLLC, and has thirty years of experience litigating employment cases similar in complexity to the instant case.  *Id.*  Based on that experience, Ms. DePaula avers that Lynch Carpenter's requested rates are unreasonable, and offers a range of hourly rates she believes to be reasonable for the Pittsburgh market based on a given attorneys' years of experience:

| Years of Experience | Hourly Rate Range |
| :---: | :---: |
| < 2 | $250 to $325 |
| 2–9 | $300 to $400 |
| 10–19 | $400 to $610 |
| 20–34 | $475 to $700 |
| 35+ | $500 to $805 |

*Id.* ¶¶ 9, 14.  The Court considers Ms. DePaula's proposed rates alongside the other evidence presented.

Considering all of the proffered evidence and the arguments on both sides, the Court concludes that Lynch Carpenter's attorneys' requested rates are not representative of a reasonable market rate for complex class action litigation in the Pittsburgh legal market when considering

---

[16] Based on the NALFA Report, attorney Gary Lynch's requested hourly rate of $1,100 is within the top 8% of the rates reported by plaintiff's counsel in complex litigation, attorney Kelly Iverson's requested hourly rate of $950 is within the top 15%, and attorneys Jamisen Etzel, Elizabeth Pollock-Avery, and Katie Horrigan's requested hourly rates of $900 are within the top 19%.  Thus, these Lynch Carpenter attorneys' requested rates are already on the high end for the Pittsburgh market when looking just at the rates themselves.  But, as noted above, these rates do not align with those reported by Ms. Wintjen's proffered comparators and Connolly Wells & Gray when considering each attorney's years of experience in complex class action litigation.

"the experience and skill of the . . . attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado*, 256 F.3d at 184.  Accordingly, exercising its discretion, the Court will reduce Lynch Carpenter's requested rates.  Attorneys Gary Lynch, Kelly Iverson, Jamisen Etzen, Elizabeth Pollock-Avery, Katie Horrigan, and James McGraw's rates will be reduced by 25% to bring them more in line with the rates reported by Ms. Wintjen's proffered comparators, Ms. DePaula's proposed rate range, and the rates requested by Connolly Wells & Gray.  As for more junior attorneys like Matthew Brady, Ken Held, James LaMarca, and Lucia Romani, there is less information in the record regarding what a reasonable rate would be for their services.  However, comparator attorney Tucker attested that an attorney with four years of experience at his firm has an hourly rate of $450, Tucker Decl., ECF No. 361-1 ¶ 16, and Ms. DePaula's rebuttal declaration attests that a rate of $300 to $400 is reasonable for attorneys with between two to nine years of experience, DePaula Decl., ECF No. 357-1 ¶ 14.  Taking these two data points into account, the Court will reduce Matthew Brady, Ken Held, James LaMarca, and Lucia Romani's requested rates by 15%.  Finally, Ms. Wintjen did not submit any useful data points for what the reasonable rate of a law clerk or paralegal would be in the Pittsburgh market, other than attorney declarations generally attesting that Lynch Carpenter's rates are reasonable.  Thus, the Court will defer to the rates established in the CLS fee schedule submitted by Denny's, recognizing that while such rates are not necessarily representative of Pittsburgh rates, they have been cited approvingly by the Third Circuit and "reflect what is at least a fair market value, and perhaps then some." *Turkovich*, 2021 WL 767629, at *1.

Accordingly, the Court approves the following rates as reasonable market rates for Lynch Carpenter's attorneys and staff:

| Professional | Title | Requested Hourly Rate | Approved Hourly Rate |
|---|---|---|---|
| Gary Lynch | Managing Partner | $1,100 | $825 |
| Kelly Iverson | Partner | $950 | $712.50 |
| Jamisen Etzel | Partner | $900 | $675 |
| Elizabeth Pollock-Avery | Partner | $900 | $675 |
| Katie Horrigan | Of Counsel | $900 | $675 |
| James McGraw | Associate | $800 | $600 |
| Matthew Brady | Associate | $550 | $467.50 |
| Ken Held | Associate | $450 | $382.50 |
| James LaMarca | Associate | $450 | $382.50 |
| Lucia Romani | Associate | $450 | $382.50 |
| James LaMarca | Law Clerk | $275 | $190 |
| Sadie Fahsbender | Law Clerk | $275 | $190 |
| Daniel Hart | Paralegal | $275 | $240 |

Furthermore, while Denny's has also challenged the reasonableness of Connolly Wells & Gray's requested rates, the Court finds that, in light of the evidence presented, the requested hourly rates of $650 for attorneys Gerald D. Wells, Robert J. Gray, and Stephen E. Connolly are reasonable for the Pittsburgh market. The Court will therefore approve those rates.

### B. The Court Will Exclude Certain of Class Counsel's Billing Entries

To conduct the second half of the lodestar calculation the Court must determine whether the hours billed by Class Counsel are reasonable. "[I]n calculating the hours reasonably expended [by a fee applicant], the District Court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude

those that are excessive, redundant, or otherwise unnecessary." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (cleaned up). Here, Denny's argues that Class Counsel's total hours must be reduced because many of Class Counsel's billing entries are either insufficiently detailed, excessive, unnecessary, redundant, or non-compensable for other reasons. ECF No. 338 at 14–20. In response, Class Counsel has agreed to withdraw a number of time entries from their fee request. *See* ECF No. 340-2. But there are still entries which Denny's has objected to which Class Counsel has not withdrawn. The Court will therefore resolve the remaining disputes.

### 1.    Improper Block-Billing

Denny's objects to approximately 100 hours of time billed between July 8, 2022 and September 7, 2022, by Lynch Carpenter attorney Ken Held as insufficiently detailed block-billing. ECF No. 338 at 15–16. For example, Denny's points out that many of Mr. Held's billing entries during this period record time spent "correspond[ing] with opt-ins" and "drafting discovery," without specifying how much time he spent on each task. *Id.* Additionally, Denny's objects to one of Mr. Held's entries reflecting that he spent three hours on "letteers [sic] mailing to opt ins drafting responses" because mailing letters is an administrative task for which an attorney would not normally bill his client. *Id.* Ms. Wintjen responds that the "the Court should reject Defendant's efforts to nit-pick plaintiffs' billing records line-by-line," and that Mr. Held's entries are not improper block-billing because "clearly the process of responding to discovery requests directed to opt-in plaintiffs requires contacting those plaintiffs to get information from them." ECF No. 340 at 5. Though Ms. Wintjen urges the Court to do otherwise, because Denny's has objected to Mr. Held's billing entries "it is necessary that the [District] Court go line, by line, by line through the billing records supporting the fee request." *Interfaith Cmty.*, 426 F.3d at 713.

"Block billing is a timekeeping method where lawyers record their daily time for various tasks in one entry, rather than using itemized time entries for each separate task." *Mozingo*, 2018 WL 4473345, at *9 (quoting *Shihee Donvell Hatchett v. Cnty. of Phila.*, No. 09-1708, 2010 WL 4054285, at *4 (E.D. Pa. Oct. 15, 2010)).  While "[b]lock billing is not an ideal practice, and lawyers who use it do so at their own peril," *id.*, the Third Circuit has held that so long as a fee petition is "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed," it "is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted," *Rode*, 892 F.2d at 1190.

Here, the Court has reviewed the challenged time entries and concludes that, although not perfect, they provide enough information for the Court to conclude that the amount of time spent on the claimed tasks was reasonable.  For example, Mr. Held's entry on August 17, 2022 for "sending verifications, prepping discovery responses, [and] contacting opt-ins" sufficiently identifies the tasks that Mr. Held worked on such that the Court can determine that they are all interrelated and involved responding to discovery requests propounded to opt-in plaintiffs.  *See* Lynch Decl. Ex. A, ECF No. 335-1 at 10.  The 4.5 hours billed for these tasks seems reasonable to the Court, and the other challenged entries contain similar levels of detail.  *See id.*  However, Denny's objection to Mr. Held's August 16, 2022, entry for "letteers [sic] mailing to opt ins drafting responses [and] drafting responses" is well-taken.  Because Mr. Held block-billed this time entry, the Court cannot determine how much of the claimed three hours was spent on mailing letters (administrative work) versus drafting discovery responses (legal work).  Accordingly, the Court will exclude this entry from Lynch Carpenter's lodestar.

### 2.    Excessive and Unnecessary Time

Denny's argues that some of the billing entries submitted by Class Counsel reflect time that was excessive or unnecessary and should therefore be excluded.  First, Denny's challenges a time entry for 1.8 hours billed by Lynch Carpenter attorney James McGraw on July 10, 2020 for time spent on drafting a deposition notice.  ECF No. 338 at 17.  Denny's notes that the deposition of its corporate representative was taken on June 11, 2020, and Ms. Wintjen did not take a further deposition in this case until May 9, 2023, therefore it is not clear what deposition notice Mr. McGraw was drafting.  *Id.*  Ms. Wintjen did not respond to Denny's objection to this entry.  *See generally* ECF No. 340.  Accordingly, the Court finds Ms. Wintjen has not carried her burden to justify this time entry and will exclude it.  *See Interfaith Cmty.*, 426 F.3d at 713 ("Where an opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of its award.").

Second, Denny's objects to 10.45 hours billed by attorneys Gerald D. Wells and Robert J. Gray at Connolly Wells & Gray for time spent drafting an unopposed motion to withdraw their clients' erroneous requests to exclude themselves from the PMWA Rule 23 Class.  ECF No. 338 at 18.  Denny's argues that it should not have to pay Class Counsel to fix their clients' mistakes because those mistakes were not Denny's fault and Denny's did not oppose the motion to correct them.  *Id.*  Denny's further argues that 10.45 hours for drafting an unopposed motion is excessive, and therefore at a minimum this time ought to be reduced to no more than one hour.  *Id.*  Again, Ms. Wintjen has not responded to Denny's objection.  The Court will therefore exclude this time. *See Interfaith Cmty.*, 426 F.3d at 713.

### 3.    Time Spent Attending Mediations

Denny's objects to time spent by Class Counsel attending each of the three mediations in this case on the basis that Class Counsel sent more attorneys than necessary to each of those mediations, resulting in an excessive bill.  ECF No. 338 at 18–19.  Class Counsel have withdrawn the time entries for Connolly Wells & Gray attorney Robert J. Gray's attendance at the second mediation on April 29, 2021, and Lynch Carpenter attorney Lucia Romani's attendance at the final mediation on March 18, 2024.  *See* ECF No. 340-2.  With respect to the final mediation, Ms. Wintjen argues that it is not unreasonable for three attorneys to attend given the complexity of the procedural issues and the amount of damages involved.  ECF No. 340 at 5.  The Court agrees, and also concludes that having two attorneys present at each of the first two mediations in this case is not unreasonable.  Accordingly, the Court will not exclude Class Counsel's time spent attending the mediations in this case, other than the time that has already been voluntarily withdrawn by Class Counsel.

### 4.    Travel Time

Finally, Denny's objects to 9.5 hours billed by Connolly Wells & Gray attorney Gerald D. Wells for travel to and from the September 17, 2019 mediation.  ECF No. 338 at 20.  As Denny's points out, "under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel."  *Interfaith Cmty.*, 426 F.3d at 710.  Ms. Wintjen has not responded to Denny's objections to these time entries.  *See generally* ECF No. 340.  Accordingly, the Court will exclude them.

After making all of the aforementioned reductions, and using the hourly rates that the Court has determined to be reasonable market rates for the services provided, the Court calculates Lynch Carpenter's final lodestar as follows:

| Professional | Approved Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Gary Lynch | $825 | 30.4 | $25,080 |
| Kelly Iverson | $712.50 | 2.2 | $1,567.50 |
| Jamisen Etzel | $675 | 12.3 | $8,302.50 |
| Elizabeth Pollock-Avery | $675 | 61.6[17] | $41,580 |
| Katie Horrigan | $675 | 23.2 | $15,660 |
| James McGraw | $600 | 138.3[18] | $82,980 |
| Matthew Brady | $467.50 | 71.7[19] | $33,519.75 |
| Ken Held | $382.50 | 145.7[20] | $55,730.25 |
| James LaMarca | $382.50 | 9.5 | $3,633.75 |
| Lucia Romani | $382.50 | 9.8[21] | $3,748.5 |
| James LaMarca | $190 | 3.5 | $665 |
| Sadie Fahsbender | $190 | 5.5 | $1,045 |
| Daniel Hart | $240 | 14.6 | $3,504 |
| **TOTAL:** | - | **528.3** | **$277,016.25** |

Connolly Wells & Gray's final lodestar is calculated as:

---

[17] Ms. Pollock-Avery billed 69.3 hours, and Class Counsel agreed to withdraw 7.7 of those hours. *See* Lynch Decl., ECF No. 335 ¶ 20;  ECF No. 340-2.

[18] Mr. McGraw billed 154.9 hours, and Class Counsel agreed to withdraw 14.8 of those hours. *See* Lynch Decl., ECF No. 335 ¶ 20;  ECF No. 340-2.  Additionally, the Court has excluded 1.8 hours of Mr. McGraw's time based on Denny's objections, as set forth more fully above.

[19] Mr. Brady billed 72.3 hours, and Class Counsel agreed to withdraw 0.6 of those hours. *See* Lynch Decl., ECF No. 335 ¶ 20;  ECF No. 340-2.

[20] Mr. Held billed 149.6 hours, and Class Counsel agreed to withdraw 0.9 of those hours. *See* Lynch Decl., ECF No. 335 ¶ 20;  ECF No. 340-2.  Additionally, the Court has excluded 3 hours of Mr. Held's time based on Denny's objections, as set forth more fully above.

[21] Ms. Romani billed 19 hours, and Class Counsel agreed to withdraw 9.2 of those hours. *See* Lynch Decl., ECF No. 335 ¶ 20;  ECF No. 340-2.

| Professional | Approved Hourly Rate | Hours | Lodestar |
|---|---|---|---|
| Gerald D. Wells | $650 | 784.7[22] | $510,055 |
| Robert J. Gray | $650 | 401.93[23] | $261,254.50 |
| Stephen E. Connolly | $650 | 45.65 | $29,672.50 |
| **TOTAL:** | - | **1,232.28** | **$800,982** |

Accordingly, after reducing Lynch Carpenter's requested rates and pruning Class Counsel's billing entries (as set forth more fully above), the Court will award Ms. Wintjen a total of $982,998.25 in attorneys' fees.[24]

## IV. Conclusion

For the foregoing reasons, Ms. Wintjen's Motion for Costs and Attorneys' Fees, ECF No. 332, will be GRANTED IN PART, as follows:

1. Ms. Wintjen will be awarded $982,998.25 in attorneys' fees.

---

[22] Mr. Wells billed 801.2 hours, and the Court has excluded 16.5 hours of those hours based on Denny's objections, as set forth more fully above. *See* Wells Decl., ECF No. 334 ¶ 26.

[23] Mr. Gray billed 412.23 hours, and Class Counsel agreed to withdraw 6.85 of those hours. *See* Wells Decl., ECF No. 334 ¶ 26; ECF No. 340-2. Additionally, the Court has excluded 3.45 hours of Mr. Gray's time based on Denny's objections, as set forth more fully above.

[24] Calculated as Lynch Carpenter's lodestar of $277,016.25 plus Connolly Wells & Gray's lodestar of $800,982, less $95,000 attributable to the 2023 Partial FLSA Settlement. *See* ECF No. 333 at 12 n.11 ("The Parties agreed in their Settlement that Plaintiffs' total request will be reduced by $95,000 to account for funds received per the [2023 Partial FLSA Settlement]."). The Court notes that the parties have not explained how the $95,000 reduction to Class Counsel's combined lodestar has been allocated between Lynch Carpenter and Connolly Wells & Gray.

DATED this 4th day of April, 2025.

BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record